FIRST NATIONAL BANK OF HUNTINGTON ,*v.* ARNOLD
ET AL.

[No. 18,902.    Filed April 19, 1901.]

TRIAL.—*Conclusions of Law.—Practice.*—Correct practice requires that conclusions of law should be stated upon' every issue formed by the pleadings and tried by the court. Statements purporting to be conclusions which merely assert that plaintiff take nothing, but that defendant have judgment for certain costs, are improper, though they may be held sufficient in cases where it clearly appears that, upon the facts found, the law is with the party in whose favor they are announced.  *p. 493.*

BANKS AND BANKING.—*Liability of Bank for Money Borrowed by Officers.—Agency.*—The vice-president of a bank, to procure a loan from another bank, represented that the loan was for his bank, and gave a note signed by himself and another director, and indorsed by the bank by its president. Thereafter the note was renewed by another, executed by the same parties, except that the indorsement by the bank was signed by the cashier. The lending bank knew who were directors of the borrowing bank, and that the cashier who made the indorsement transacted all of its business. *Held*, that although the indorsement was not authorized by the board of directors, and the proceeds of the loan were not in fact received by the bank, but were misapplied by the officers who procured it, the bank was liable.  *pp. 493-496.*

EVIDENCE.—*Admission.*—Where two directors of ·a bank executed a note for a loan from another bank, the note being indorsed by the borrowing bank's president, and this note was renewed by another executed by the same parties, except the indorsement was made by the cashier, and in a suit on the note the bank defended on the ground that its officers had no authority to make the indorsement, and that the loan was not procured for the bank, it was error not to admit evidence that the president of the borrowing bank told the cashier of the lender, prior to the renewal, that the loan was for the bank.  *p. 497.*

SAME.—*Res Gestae.*—In an action against a bank on a note indorsed by one of its officers, where the bank defended on the ground that the indorsement was without authority, evidence as to conversations between officers of defendant bank at the time the note was executed was not admissible as a part of the *res gestae. pp: 497, 498.*

SAME.—*Banks and Banking.—Custom.*—Where, on the trial of an action against a bank on a note indorsed by its cashier, the bank

defended on the ground that the indorsement was not authorized by the bank, it was not error to admit evidence showing that it was the custom in that vicinity for bank officers to borrow money without special authority from the board of directors.  p. 498.

From the Elkhart Circuit Court.  Reversed.

J. B. Kenner, U. S. Lesh and L. Wanner, for appellant. J. M. Van Fleet, V. W. Van Fleet, J. S. Slick and N. G. Hunter, for appellees.

Dowling, C. J.—Action upon two notes for $3,000 each, executed by Thomson Arnold, James Arnold, and William D. Frazer, dated August 22, 1893, payable respectively at sixty and ninety days after their date to the First National Bank of Huntington, at its bank in Huntington, Indiana, the indorser waiving presentment for payment and notice of non-payment, and indorsed, "First National Bank of North Manchester, Indiana, Ruskin Arnold, Cashier." The complaint, which was in four paragraphs, sought to charge the appellee, the First National Bank of North Manchester, as joint maker, or indorser. The latter answered in fifteen paragraphs, the first of which was a general denial under oath. Reply by appellant. There was a special finding of facts with conclusions of law thereon. The court found that the First National Bank of North Manchester neither executed nor indorsed either of the notes sued upon, and one of its conclusions was that the appellant take nothing by its suit against the First National Bank of North Manchester. The errors assigned and not waived by failure to discuss them are those calling in question the correctness of the conclusions of law, and the ruling of the court upon the motion for a new trial.

The special finding was substantially as follows: That on and before November 23, 1892, the appellant, the First National Bank of Huntington, was, and had been, a national bank organized under the "National Bank Act", carrying on its business in the city of Huntington, Huntington county, Indiana, and that one William McGrew was its

cashier; that on and long before said date the appellee, the First National Bank of North Manchester, was a national bank organized under said act, and carrying on its business at the city of North Manchester, in Wabash county, in said State; that it continued in business until October 4, 1893, when the national bank examiner closed it, and that on October 16, 1893, the comptroller of the currency appointed one Daniel W. Krisher receiver for said bank, who took possession of its assets and ever since has been engaged in winding up its business; that one Jesse Arnold was the president of said First National Bank of North Manchester, and was its active manager; that one James Arnold was its vice-president, but took no active part in the management of its affairs; that the said James Arnold conducted a private bank owned by himself and the said Jesse Arnold under the name of James Arnold & Co. at the town of South Whitley, in Whitley county, Indiana, where he resided, and being about ten miles from North Manchester; that Thomson Arnold, who was a son of the said Jesse Arnold, was the bookkeeper and cashier of James Arnold & Co., and represented his father in that firm; that for three years preceding the appointment of said receiver one Ruskin Arnold, a brother of James, and a nephew of Jesse Arnold, was the cashier of the First National Bank of North Manchester, with the usual powers of that officer; that about October 13, 1892, the banking firm of James Arnold & Co. failed in business, and its affairs were placed in the hands of a receiver; that it was wholly insolvent, as was each member of that firm, and that Thomson Arnold and William D. Frazer also were insolvent at the date last named; that on November 28, 1892, for value then received, the said James Arnold and Thomson Arnold executed their promissory note to the appellant for the sum of $5,000, which said First National Bank of Huntington yet holds and on which a balance is due; that shortly before January 11, 1893, James Arnold applied to the appellant for a loan of $5,000

upon a note signed by James Arnold, Thomson Arnold, and William D. Frazer, which application was refused, but that the appellant offered to make the loan upon the condition that the First National Bank of North Manchester would indorse the paper; that on January 11, 1893, James Arnold procured the indorsement of the First National Bank of North Manchester upon a note for $5,000, dated January 11, 1893, payable to the First National Bank of Huntington, and signed by James Arnold, Thomson Arnold, and William D. Frazer; that the words "First National Bank of North Manchester, Indiana" were stamped on the back of this note by its president, who wrote after them "Jesse Arnold, president"; that the note, so signed and indorsed, was delivered by James Arnold to the appellant, who paid to said James Arnold, in money, the face value less the legal rate of interest for the time it had to run; that the appellant knew who the officers of the Manchester bank were, and also knew who composed the firm of James Arnold & Co., and that James Arnold was the business manager of that firm; that at the time of the loan the Manchester bank had five directors, among whom were the said James, Jesse, and Thomson Arnold; that the Huntington bank acted in the utmost good faith in making the loan, but was deceived by the falsehoods of James Arnold and Thomson Arnold, and by the appearance of the name of Jesse Arnold on the back of the note; that the Manchester bank never gave James Arnold authority to negotiate a loan for it, or for its benefit, and that when he delivered the said note to the Huntington bank, and received its proceeds, he had no authority to act for said Manchester bank except that conferred by his official position, and that the Huntington bank relied upon the statements of the said James and Thomson Arnold as to his authority, without making further inquiry; that when the said Jesse Arnold indorsed said note for the Manchester bank, he had no authority from said bank to do so, except such as might be implied from his official position as its president.

That no part of the proceeds of the note of January 11, 1893, was received by the Manchester bank, nor did it receive any benefit from the said note, or the discounting thereof; that the indorsement by the Manchester bank was made solely to enable James Arnold & Co. to obtain a loan of money for the said James Arnold, or for use in his private banking business; that William D. Frazer received none of said loan, and derived no benefit from the said transaction, but that he signed said note for the accommodation of the said James and Thomson Arnold; that afterwards, on May 12, 1893, the said note was renewed by the execution and delivery of another note of like amount, signed and indorsed in the same manner as the first mentioned note, which was then surrendered; that the note of May 12, 1893, was not paid at its maturity, and that James Arnold caused the two notes sued upon in this action to be prepared, and to be signed by himself and by Thomson Arnold and William D. Frazer; that the said two notes were left by James Arnold at the banking house of James Arnold & Co., at South Whitley; that on the Sunday following, at said James Arnold & Co.'s bank, Thomson Arnold produced said two notes for $3,000 each, sued on herein, to Ruskin Arnold, the cashier of said Manchester bank, informing him that they were in renewal of the former note or notes, and that he requested him to stamp and sign the indorsement of the Manchester bank thereon, as cashier, which the said Ruskin Arnold then and there did; that on September 27, 1893, James Arnold brought the two notes so signed and indorsed to the Huntington bank, and left them there as and for renewals of the $5,000 note, and for a credit of $1,000 upon the note of November 23, 1892, payable to the Huntington bank, and signed by James Arnold and Thomson Arnold; but, there being unpaid interest on the note proposed to be renewed, the Huntington bank declined to accept them and surrender the $5,000 note until such interest should be paid, yet, provisionally and conditionally, received

the notes sued on, and held the $5,000 note as well, awaiting the payment of said interest; that on October 18, 1893, Thomson Arnold paid to the Huntington bank the said interest, amounting to $226.89, and also paid $271.33 on the sixty-day note sued on, and, thereupon, the Huntington bank placed a credit of $1,000 on the note it held against James Arnold and Thomson Arnold as of the date of November 23, 1892, and then and there surrendered to James Arnold the $5,000 note of May 12, 1893, and the notes sued on had no other consideration; that, when Ruskin Arnold, the cashier of the Manchester bank, indorsed the said notes in the name of that bank, he had no special authority to do so, and only such general authority as might be implied from his official position as cashier. That at the time of the execution of a certain other note for $5,000 signed by James and Thomson Arnold, dated November 23, 1892, the said James Arnold deposited with the Huntington bank, as collateral security for the payment of the said note ten bonds of the Warsaw Gas Light and Coke Company, of the denomination of $500 each; that after the failure of the Manchester bank and of James Arnold & Co., William D. Frazer claimed that the said bonds were pledged as collateral security for the note he had signed, viz., that of January 11, 1893, and not for the note of November 23, 1892, to which he was not a party; that, insisting upon its claim, the Huntington bank on February 3, 1894, advertised and sold said bonds for $2,900, itself becoming the purchaser, and credited the amount on the said note of November 23, 1892; that the said Frazer still urged his claim that the said bonds were collateral security for the note signed by him, and that the Huntington bank made an agreement in writing with Frazer by which it bound itself to sell said bonds to any one he might name, within a limited time, for the sum of $3,541.47, and thereafter to prosecute this suit against the other parties to the note only, and that upon the final hearing of the case, he, said Frazer,

should have judgment for his costs, and be released from any obligation upon the notes herein sued on; that, pursuant to said contract, the Huntington bank did sell said bonds, within the time prescribed, to a purchaser named by Frazer, and for the price agreed upon, which it received as the full value of said bonds; that there is due and unpaid upon the notes sued on, interest and attorney's fees included, $8,370.97, collectible without relief; that James Arnold and Thomson Arnold as principals, and William D. Frazer as surety, executed the notes sued upon, but that Frazer was released without releasing any other party; that the First National Bank of North Manchester did not execute either of the notes sued upon, nor did it indorse either of them.

The conclusions of law (so-called) were as follows: "(1) Judgment for costs for William D. Frazer. (2) Plaintiff take nothing in this suit from defendant, First National Bank of North Manchester, but said First National Bank of North Manchester have judgment for its costs herein, and judgment against James Arnold and Thomson Arnold for $8,370.97."

In form, these conclusions of law are so far from what they should be that we feel it our duty to call attention to their defects. Conclusions so stated may be held sufficient in cases where it clearly appears that, upon the facts found, the law is with the party in whose favor they are announced; but the adoption of such forms cannot be commended. They are in no sense proper statements of conclusions of law. As mere directions to the clerk for the preparation of an entry, they might be serviceable; but they are not what the law intends, nor what the parties to the action are entitled to have. Many important questions of law arose upon the several findings of fact, and the plain rules of correct practice required that a conclusion of law should be stated upon every issue of fact formed by the pleadings and tried by the court.

(1) Under the errors assigned, the first question pre-

sented by the record is whether the decision of the court that the First National Bank of North Manchester was not liable upon the notes sued on, either as maker or indorser, was correct.

The decisions of the Supreme Court of the United States in *Auten* v. *United States Nat. Bank,* 174 U. S. 125, 19 Sup. Ct. 628, 43 L. Ed. 920, and in *Aldrich* v. *Chemical Nat. Bank,* 176 U. S. 618, 20 Sup. Ct. 498, 44 L. Ed. 611, leave no room to doubt that, in the opinion of that court, a national bank may borrow money, either directly upon its own obligations, or by rediscounting notes or bills in its possession. It is also made manifest by these decisions that the authority of a bank officer to effect such loans in the name of the bank, or on its behalf, may be presumed from the custom of the borrowing bank, the usage of the parties, or the usage of communities. Even where the officer nego-tiating the loan is without authority to do so, the subsequent retention of the moneys by the borrowing bank, with knowl-edge of the facts, is held to be a ratification of the acts of the bank officer in negotiating the loan, and to render the bank liable. Conceding the power of the bank to borrow money, the question in these cases seems to be one which must be determined by the ordinary rules of agency.

Do the facts of this case bring it within any of these prin-ciples? The application for the loan, out of which the notes in suit grew, was made by James Arnold, the vice-president of the Manchester bank. The note which he offered to the Huntington bank was signed by himself and Thomson Ar-nold. He represented that the proposed loan was for the use of the Manchester bank. The Huntington bank refused to take the paper unless indorsed by the alleged beneficiary. Such a note was afterwards presented to the Huntington bank by the vice-president of the Manchester bank, with the indorsement of the Manchester bank, signed by its cashier. It was known by the Huntington bank that this cashier, with the knowledge of the directors of the Manchester bank had

the general management of its business. The Huntington bank, relying upon the statements made by the officers of the Manchester bank, and believing the indorsement of the paper by that bank to have been duly authorized, discounted the paper, and paid over the proceeds to James Arnold, the vice-president of the Manchester bank. Admitting, as the fact undoubtedly was, that this proceeding was a scheme to obtain the money for the use of the Arnolds, and that the money so obtained was, afterwards, misapplied by the officers of the Manchester bank, did such fraud and misapplication relieve that bank from liability upon its indorsement of the notes sued upon ? In our opinion it did not. The liability of the bank, if it existed at all, did not depend upon the reception and retention of the proceeds of the note or notes discounted. The case before us turns upon the inquiry whether the persons procuring the original loan of $5,000 from the Huntington bank and those who executed the renewal notes now in suit had the actual or apparent authority to procure such loan on behalf of the Manchester bank, and to bind that bank by the several notes given for the same. It appears from the special findings that Jesse Arnold, who caused the name of the Manchester bank to be stamped on the original note of $5,000, and on the first note given in renewal thereof, was the president of that bank; that James Arnold, who conducted the business on behalf of the Manchester bank, was its vice-president; that Ruskin Arnold, who signed the indorsement of the notes sued on, was the cashier of the Manchester bank; and that the said James, Jesse, and Thomson Arnold were three of the five directors of the Manchester bank. It was represented to the Huntington bank by the vice-president of the Manchester bank that the loan was for its benefit. The paper presented and discounted bore the official signatures of the president and the cashier of that bank. The names of three of the directors of the bank appeared upon the paper. From what more reliable source could the Huntington bank have ob-

tained information·concerning the object of the loan,.and the person or corporation for whose use it was negotiated? The Manchester bank had the power to borrow money. Its officers and directors were its legal and proper agents and representatives,.and by their representations and acts on its behalf the bank was bound in all transactions within the scope of their authority. The loan procured from the Huntington bank and the execution of both the original note and the notes in renewal thereof were such transactions. *National Bank* v. *National Bank,* 141 Ind. 352, 50 Am. St. 330; *Hawkins* v. *Fourth Nat. Bank,* 150 Ind. 117.

, We think that the form of the note on which the money was procured was immaterial, and that the Manchester bank was equally bound whether it signed the note as maker or indorser. If the statements made to the Huntington bank by the officers of the Manchester bank were true, then James Arnold, Thomson Arnold, and William D. Frazer made the paper for the accommodation of the bank, and, as between themselves, the Manchester bank was primarily liable for the payment of the notes.

The thirteenth and fourteenth findings of fact were as follows: (13) "The court finds that the defendant, the First National Bank of North Manchester, Indiana, did not execute either of the notes sued upon." (14) "The court finds that the defendant, the First National Bank of North Manchester, Indiana, did not indorse either of the notes sued upon, but did indorse the $5,000 note given January 11, 1892, as alleged, yet did not execute." (sic) These so-called findings of fact seem rather to be conclusions of law, and add nothing to the force of the finding. In our opinion, the court erred in its second conclusion of law that the plaintiff should take nothing from the defendant, the First National Bank of North Manchester.

(2) In considering the ruling upon the motion for a new trial, we need not examine the question of the sufficiency of the evidence to sustain the special finding, or the consistency of that finding with the law. The·views we have ex-

pressed proceed upon the ground that the finding is favorable to the appellant.

The court, upon the objection of the appellee, refused to permit William McGrew, the cashier of the Huntington bank, to testify that, after the original loan, and before the execution of the notes given in renewal thereof, Jesse Arnold, the president of the Manchester bank, told him, McGrew, that the note of $5,000 was the loan of the bank, and was all right. This evidence was competent, and should have been admitted. It was important to the Huntington bank to ascertain at any time whether the note discounted by it was, in fact, executed by the Manchester bank, and for its benefit. If the note was a forgery, if its execution had been procured by fraud, if it had been indorsed in the name of the bank without authority, or if the Manchester bank had any defense to it, the Huntington bank not only had a right to know the facts, but it had an interest in ascertaining those facts at any time while it held the paper. Such an inquiry addressed by the holder of a promissory note to the supposed maker or indorser of the instrument is pertinent and important, if made at any time before the maturity of the note, and the answer of the maker, or his legal representative, is competent evidence on behalf of the holders of the note on the trial of an action upon the instrument.

The ninth and tenth reasons for a new trial are not available to the appellant because the paper alleged to have been erroneously excluded by the court is not in the bill of exceptions. As we cannot examine it, we are unable to determine whether it was competent evidence or not.

The eleventh and twelfth reasons for a new trial were the admission by the court, over the objection of the appellant, of the following testimony, and the refusal of the court, upon the motion of the appellant, to strike it out. On his direct examination, Jesse Arnold, a witness for the appellee, was asked the following question: "If there was anything

said, how or why it would put it in better form, state that."
To this, the witness answered: "The particular reason as-
signed was that the managers of the First National Bank of
Huntington would be able to make a better showing in their
report, or showing in their bills." The question and answer
related to a conversation between Jesse Arnold, the presi-
dent of the Manchester bank, and James Arnold, its vice-
president, concerning the indorsement of one of the notes
by the Manchester bank. None of the officers of the Hunt-
ington bank was present, and for that reason the evidence
was not competent. Private conversations between the
officers of the Manchester bank at the time of the signing
or indorsement of the notes, even if explanatory of the rea-
sons for executing the paper, cannot be regarded as a part
of the *res gestae.* The objection of the appellant should
have been sustained.

The sixteenth reason for a new trial was the exclusion
by the court of evidence offered by appellant of the custom
of national banks, and national bank officers, in the vicinity
of the North Manchester bank, to borrow money for the use
of such banks without special authority from the board of
directors. Proof of the general usage as to the manner of
doing business by national banks in the community, and in
the vicinity of the borrowing bank, including the methods
adopted for supplying the temporary necessities of such
banks for money, the nature of the authority required to be
shown by the officers of the borrowing banks, and other cir-
cumstances connected with such transactions, was admis-
sible; but, neither the question proposed, nor the particular
facts expected to be established by it, came within the rule
in such cases. The court did not err in sustaining the ob-
jection to the question.

For the error of the court in its second conclusion of law,
and for its error in overruling the appellant's motion for
a new trial, the judgment is reversed, with instructions to
grant a new trial, and for further proceedings in conformity
with this opinion.