# COLE *v.* LEACH.

[No. 6,921.   Filed March 29, 1911.]

1. CONTRACTS.—*Interpretation.*—*Particular Trades.*—*Customs and Usages.*—Contracts between tradespeople should be interpreted in accordance with the custom and usage of such trades.   p. 344.

2. CONTRACTS.—*Particular Trades.*—*Abbreviations.*—*Explanations.* —*Complaint.*—A complaint on a contract relating to a particular business and containing abbreviations peculiar to such business, should aver extrinsic facts making such contract intelligible. p. 344.

3. EVIDENCE.—*Parol.*—*Explaining Writings.*—Parol evidence cannot be heard to contradict a writing, but may be admitted to clear up ambiguities, abbreviations, particular customs and the like.   pp. 344, 346.

4. CONTRACTS.—*Sale of Lumber.*—*Complaint.*—*Evidence.*—An order by plaintiff, accepted by defendant, for "200 M. ft. of No. 4 Wisconsin pine boards either S 2 S or resawed rough $16.25 to be shipped out during the coming fire of the glass factories of 1905 and 1906 as [plaintiff] may order them shipped," and that "the above price is f. o. b. an 18¢ rate from the north," constitutes a contract; and a complaint alleging the breach thereof is sufficient, parol evidence being admissible to show the trade meaning of the terms employed.   p. 345.

5. CONTRACTS.—*Words and Phrases.*—*"18¢ Rate from the North."* —A contract for lumber at $16.25 a thousand "f. o. b. an 18¢ rate from the north" indicates that the price should be $16.25 a thousand f. o. b. at any point of delivery having an 18¢ freight rate from the north.   p. 346.

6. CONTRACTS.—*Damages.*—*Price of Lumber.*—*Special Findings.*— Special findings that the market value of the grade of lumber contracted for "was from $19.50 to $21.50 a thousand, plus an 18¢ freight rate on all shipments" to point of delivery, and that the increase in the market value of such lumber was $3 a thousand, and that the contract price was $16.25 f. o. b. at any point within an 18¢ freight rate from the north, sufficiently show the contract price and the market value of the lumber. p. 346.

From Grant Superior Court; *William H. Carroll,* Special Judge.

Action by William D. Leach against Charles W. Cole. From a judgment for plaintiff, defendant appeals.   *Affirmed.*

*Grant A. Dentler,* for appellant.

*Ovid B. Jameson, Frederick A. Joss, Linn D. Hay* and *Condo & Browne,* for appellee.

FELT, J.—An action for damages for breach of contract on account of failure of appellant to deliver to appellee certain lumber, in accordance with an alleged written contract.

The complaint was in one paragraph, to which a demurrer was filed for want of facts, and overruled with exception.

The court upon request made a special finding of facts and stated conclusions of law thereon, which were in favor of appellee. Judgment was rendered in the sum of $600, from which this appeal is taken.

The errors relied upon for reversal are as follows: (1) Overruling the demurrer to the amended complaint; (2) error in the conclusions of law; (3) overruling appellant's motion for a new trial.

The motion for a new trial assigned as reasons therefor, that the decision of the court was contrary to law and was not sustained by sufficient evidence, and that there was error in the admission of certain evidence.

The complaint alleges generally that the parties entered into an agreement in writing, which is as follows:

"Order No. 300, Indianapolis, Ind.,
September 1, 1905.
C. W. Cole.
Ship to W. D. Leach
at 8¢ rate out of Chicago, Ill.
How ship...... When......
Terms: 1½% or 60 days
200 M ft. of No. 4 Wisconsin pine boards
Either S2S or resawed rough $16.25
To be shipped out during the coming
fire of the glass factories of 1905
and 1906 as W. D. Leach may order them
shipped.
The above price is f.o.b an 18¢ rate
from the north.
                    W. D. Leach.
Accepted:
    C. W. Cole."

It further alleges that orders were given to appellant by appellee in pursuance thereof, and that appellant refused to comply therewith, and failed to ship lumber as agreed; that the price of lumber advanced, resulting in damages to appellee; that certain terms and abbreviations used in the memorandum have a definite and fixed meaning, understood by the parties, and generally so understood by persons engaged in the lumber business, which, for the purposes of this opinion, need not be set out in detail.

It is contended that the complaint is insufficient because there is no averment that Marion and Lapel, Indiana, are within an eighteen cent freight rate from the place designated as "north," appellee having ordered shipments to said towns.

The complaint is also attacked for insufficiency of facts on the ground that the memorandum or contract, a breach of which is the basis of the action, is unilateral, lacks mutuality, and is indefinite, uncertain and insufficient to evidence an agreement between the parties.

The court, in the finding of facts, states that the contract was entered into by the parties on September 1, 1905; that appellee gave three several orders, each for 20,000 feet of lumber, on January 2, January 6, and February 7, 1906, respectively, all under and in pursuance of the alleged agreement. The court also found and stated the meaning of the several abbreviations and terms used in the alleged contract, as understood by the parties thereto; that appellant received said orders, and failed to deliver any lumber thereon; that prior to the commencement of this action appellee demanded of appellant $600 damages, which he refused to pay. Findings seven and nine of the court are as follows: "(7) That on January 2 and 6, and February 7, 1906, and for several days following each of said dates, the market value of said lumber, and of lumber of the same grade and kind, was from $19.50 a thousand to $21.50

a thousand, plus an eighteen cent freight rate on all shipments and deliveries to Lapel and Marion, Indiana."

"(9) That the fair and reasonable increase and advance in the market value of the lumber of the kind and quality sold by the agreement set out in finding No. 1, from September 1, 1905, to January 2 and 6, and February 7, 1906, and several days after each of said dates was $3 a thousand."

When parties enter into a contract with reference to a particular business or trade, they are presumed to contract with reference to the known and ordinary usage of

1. that particular business or trade, and their contracts are to be interpreted consistently with such usage when it is not inconsistent with the contract. Where a complaint declares upon a writing containing abbreviated and incomplete terms, averments of extrin-

2. sic facts are permissible to make intelligible that which is *per se* unintelligible. *Jaqua* v. *Witham & Anderson Co.* (1886), 106 Ind. 545; *Rastetter* v. *Reynolds* (1903), 160 Ind. 133; *Leiter* v. *Emmons* (1898), 20 Ind. App. 22; *Van Camp Packing Co.* v. *Hartman* (1890), 126 Ind. 177-179; *First Nat. Bank* v. *Fiske* (1890), 133 Pa. St. 241, 19 Atl. 554, 19 Am. St. 635, 7 L. R. A. 209.

Parol evidence cannot be heard to vary or contradict the terms of a written instrument, but may be received to explain that which is ambiguous, and the rule applies

3. to abbreviations and the unusual use of letters, signs and characters, and to peculiar combinations of letters and figures, where used with reference to some particular business in relation to which the contract is made. 1 Elliott, Evidence §§605, 607, 608 and cases cited; 1 Greenleaf, Evidence (13th ed.) §282; *Lyon* v. *Lenon* (1886), 106 Ind. 567; *Barton* v. *Anderson* (1886), 104 Ind. 578; *Lake Erie, etc., R. Co.* v. *Bowker* (1894), 9 Ind. App. 428; *Leiter* v. *Emmons, supra; Rastetter* v. *Reynolds, supra.*

The instrument before set out contains terms sometimes

called "mercantile shorthand," not commonly and generally understood, but in this case peculiar to the lumber business.

It is proper to aver extrinsic facts and to receive evidence to explain such terms, and the contract is to be viewed in the light of such explanations, which must be heard not to contradict, but to make clear to the court the provisions of the contract, as understood by the parties thereto.

As thus explained, the writing evidenced a proposition signed by appellee, ordering 200,000 feet of lumber at a certain price and on certain terms and conditions to be shipped from Chicago, Illinois, by appellant, during certain parts of the years 1905 and 1906, in separate shipments, as ordered by appellee, which proposition was accepted by appellant. Both parties were bound by the terms, and could not violate them without legal excuse and escape liability.

The fact that the memorandum standing alone, to one unfamiliar with the commercial terms employed, appears imperfect, indefinite and uncertain, does not make it insufficient to constitute a binding contract between the parties engaged in the lumber business, and who, as shown by the evidence and found by the court, clearly understood the figures, signs and terms employed.

The questions raised by the demurrer and by the objections to the admission in evidence of the memorandum of sale, and the several orders for shipment of the lumber, and to the explanation of the terms and abbreviations of the instrument, are so similar to those discussed and decided in *Jaqua* v. *Witham & Anderson Co.,* *supra,* that further discussion here is unnecessary. There is no available error in the ruling upon the demurrer or in the admission of evidence. See, also, *Van Camp Packing Co.* v. *Hartman,* *supra; Reissner* v. *Oxley* (1881), 80 Ind. 580.

The objection that the words, "at 8¢ rate out of Chicago, Ill.," and "the above price is f. o. b. an 18¢ rate from the

north," are so indefinite as to have no meaning that can be ascertained, we think, is not tenable. The price was $16.25 a thousand, f. o. b. an eighteen cent freight rate from the north, which meant $16.25 a thousand f. o. b. at any point of delivery that had an established eighteen cent rate from the north, to which appellee might direct shipments, and Lapel and Marion having such a rate, as shown by the evidence, it was the price of lumber delivered there, if so ordered by appellee.

The contention that the court erred in its conclusions of law, for the reason that there was a failure to find the market value of the lumber at the place of delivery, is likewise untenable.

Finding seven, heretofore set out, shows that "the market value of said lumber, and of lumber of the same grade and kind, was from $19.50 to $21.50 a thousand, plus an eighteen cent freight rate on all shipments and deliveries to Lapel and Marion, Indiana," and this must be held to fix the market value of lumber at those points.

Finding nine is to the effect that the reasonable increase in the market value of the lumber of the kind and quality covered by the agreement was $3 a thousand, and the further finding of the court, that the price made in the contract was $16.25 f. o. b. at any point within an eighteen cent freight rate from the north, as already shown, included Lapel and Marion, Indiana. Thus it will be seen that both the contract price and the market value were found by the court and stated in its finding of facts.

The court found that the figures "$16.25" in said contract mean, and were understood by the parties at the time to mean, "$16.25 a thousand feet."

The oral testimony introduced, which enabled the court to find the foregoing facts, did not add to nor vary the terms of the contract as understood by the parties at the time, but only explained the meaning of those

figures when used in connection with the lumber business, as the parties to the agreement understood them. ·

The same explanation applies to the phrase "coming fire of the glass factories of 1905 and 1906," and there was no error in admitting testimony to explain the time to which reference was thus made.

The complaint was sufficient. The court did not err in overruling the motion for a new trial nor in its conclusions of law.

Judgment affirmed.

Myers, C. J., absent.