## DENNY v. CARPENTER CONSTRUCTION COMPANY.

[No. 13,463.   Filed October 24, 1929.   Rehearing denied February 21, 1930.   Transfer denied April 8, 1930.]

*Henry M. Dowling* and *Dix & Dix*, for appellant.
*Henry W. Moore*, for appellee.

NICHOLS, J.—Action by appellant as ancillary receiver of the American Bonding and Casualty Company against appellee, to recover premiums on road construction bonds executed by the American Bonding and Casualty Company and by its predecessor, Chicago Bonding and Insurance Company, as sureties, at the instance of and for the benefit of appellee, who had submitted bids for and had been awarded the construction of five public highways in Vigo County, Indiana. There was judgment that appellant take nothing, from which this appeal.

Appellant's demurrer to appellee's third paragraph of answer to each of appellant's five paragraphs of complaint was overruled, and this ruling and each of the court's conclusions of law and the overruling of appellant's motion for a new trial are respectively assigned as error.

There being special findings and conclusions of law, we do not set out the pleadings and rulings thereon. By these findings, it is found that appellant is the ancillary receiver in Indiana of the American Bonding and Casualty Company, the successor in interest of the Chicago Bonding and Insurance Company. Appellee was a corporation engaged in constructing public highways, having its principal place of business in Terre Haute, Indiana.

The Chicago Bonding and Insurance Company, on and prior to January 13, 1920, and the American Bonding and Casualty Company, on and prior to May 28, 1920, were surety companies, acting as surety for compensation on bonds of contractors for construction of public highways.

On June 16, 1921, the district court of Woodbury County, Iowa, in proceedings wherein the principal receivership of the American Bonding and Casualty Company was pending, ordered, adjudged and decreed that all bonds on which said company was liable were canceled by operation of law upon the appointment of a permanent receiver for said company by said court as of February 26, 1921.

Shortly prior to January 13, 1920, the board of commissioners of Vigo County ordered the improvement of a highway located wholly within said county, and known as "the Leroy Christy Road," and gave notice for bids for the construction thereof. On January 13, 1920, in response to the notice for bids, appellee filed with the auditor of Vigo County its written proposal or bid for the construction of said road, in which bid it was stated that appellee proposed, for the consideration of $209,737, to construct the improvement in accordance with the plans and specifications on file.

At the time appellee filed its bid, it accompanied the same and filed with the auditor of Vigo County, a written bond, executed by it as principal and the American Bonding and Insurance Company as surety, in the sum of $420,000, which bond was for the faithful performance of the contract and the payment of all legal obligations on the part of appellee.

Prior to the execution, filing and submission of said proposal and bond, appellee executed a written application for said bond, in which application it stated, *inter alia,* that the work must commence when the bonds were

sold, and be completed in 300 days, and, in consideration of the Chicago Bonding and Insurance Company consenting or agreeing to execute or guarantee the bond applied for, agreed to pay in advance the premium or fees agreed upon, namely: For the proposal or bid bond, $——; for the full maintenance or guaranty period, $1.50 per $1,000 of contract; for the contract bond, $3,071.05 for the first year or fraction thereof, and $3,071.05 per annum in advance thereafter, it being agreed and understood that said rate for the contract bond was based upon a charge of $15 per $1,000 of the contract price, subject to final adjustment upon completion of the contract, based upon the actual amount of work done as shown by the certificate of the engineer or architect in charge; such annual payments to be made until appellee should deliver to said company at its home office in the city of Chicago competent written evidence of its discharge from such suretyship and from all liability by reason thereof.

The Chicago Bonding and Insurance Company, in reliance upon and in response to said application, on or about January 13, 1920, executed and delivered to appellee the bond mentioned above. Thereafter, the said bid and bond of appellee were accepted by the board of commissioners of Vigo County, and the contract for the construction of said road was legally awarded to appellee.

The construction of the said Leroy Christy Road was begun subsequent to the sale of the county bonds, the same having been sold on February 25, 1921, though dated March 1, 1921, and said road was completed by appellee and accepted and appellee received the full contract price therefor.

On or about May 28, 1920, in response to legal notice for bids, appellee filed with the auditor of Vigo County its four separate bids for the construction of each of the following highways: Hill Road, $120,680; Sidenbender

Road, $172,000; Dodd Road No. 1, $142,505; Dodd Road No. 2, $121,369. Accompanying each of the four bids, appellee submitted a bond furnished by the American Bonding and Casualty Company. For each of the four bonds, appellee made written application, which written applications were each substantially of the same tenor and effect except as to name of surety, the name of the proposed improvement and cost thereof, and the amount of the premium to be paid, as the written application above mentioned.

The premiums for the four construction bonds furnished appellee by the American Bonding and Casualty Company were stated in said written applications, to wit: For the Hill Road bond, $1,810.20; for the Sidenbender Road bond, $2,580; for the Dodd Road No. 1 bond, $2,137.58; and for the Dodd Road No. 2 bond, $1,820.54. Said bids and bonds of appellee were accepted and approved by the proper officers of Vigo County, and the four said contracts were legally awarded to appellee.

The construction of each of the four roads was afterwards undertaken and completed by appellee, and said work has been accepted and paid for in full by the board of commissioners.

The premiums sought to be recovered in this suit are premiums alleged to be due on contract or "construction bonds only," as heretofore designated; said premiums, if due at all, never began to run until the improvement or construction bonds of the county were sold.

Prior to the commencement of this suit, proper demand was made by appellant on appellee for the payment of each of the premiums sought to be recovered herein, which appellee refused.

The written applications for the bonds under consideration clearly provide one premium while the bonds are serving the purpose of "proposal or bid bonds," another

premium while they are serving the purpose of "con-
struction" bonds, and yet another premium while they
are serving the purpose of "maintenance" bonds; and
there is and was a general custom or understanding
among bonding companies and contractors doing busi-
ness in Indiana that the "construction" bond premiums
do not accrue or become due until after the county bonds
or improvement bonds of the county have been sold.
This general custom has application in this case.

The general agent for the bonding companies within
the state, who represented said companies in the execu-
tion of the bonds here under consideration, construed
the contracts as set out in the written applications for
the bonds as providing for the payment of the "con-
struction bond" premiums only after the county bonds
or improvement bonds of the county were sold. The
county bonds or improvement bonds of the county above
mentioned were sold on the following dates, to wit:
For the Christy Road, the bonds were sold on February
25, 1921; for Dodd Road No. 1, on August 16, 1921; for
Dodd Road No. 2, on September 10, 1921; for Siden-
bender Road, on July 1, 1921; and for Hill Road, on
January 1, 1922.

The American Bonding and Casualty Company went
into the hands of a permanent receiver on February 26,
1921, and the liability of said company upon its policies,
bonds and undertakings, including the bonds here under
consideration, was canceled by operation of law as of said
date, and said cancellation was properly entered of record
by a court having jurisdiction in the premises. The
court also found that the Iowa court rendered judgment
that "as a matter of law, no liability accrued on any of
the policies, contracts or undertakings of the American
Bonding and Casualty Company for losses which oc-
curred or damages which were sustained after the ap-
pointment of the permanent receiver on Februay 26,

1921"; and the said court further held "the date of the appointment of said permanent receiver, to wit, the 26th day of February, 1921, is the date from which the return premiums should be computed to which the holders of policies, bonds and undertakings of said American Bonding and Casualty Company are entitled."

The written applications for the bonds provide for one premium while the bonds are serving the purpose of proposal or bid bonds, another premium while serving the purpose of construction bonds, and yet another premium while serving the purpose of maintenance bonds. There is and was a general custom among bonding companies and contractors doing business in the state that construction-bond premiums do not 'accrue or become due until after the county bonds or improvement bonds of the county have been sold. There was a general business custom in vogue in the state at the time the bonds here under consideration were applied for, to the effect that no premium on road-construction bonds, other than the proposal or bid premium on each bond, becomes due or accrues until the county bonds, or improvement bonds of the county, were sold, and that said general custom was well known and understood to exist and apply to the bonds here under consideration, by the contracting parties. On these findings, the court stated conclusions of law that the law of the case is with appellee.

We are not in harmony with appellant's contention that the question at issue is as to whether a trade custom could control the express and implied stipulations of appellee's written application to appellant for the road-construction bonds by incorporating therein that the premiums, other than a nominal bid-bond premium, agreed to be paid for such bonds respectively, should not become payable unless and until county or improvement bonds issued against the several proposed highway improvements had been actually sold

by Vigo County. Nor is the question whether the written application could be altered by parol evidence, from an absolute agreement to pay premiums, to a conditional agreement whereby payment was made dependent upon prior sale of county bonds. Appellant more nearly expresses the question at issue when he says it is as to whether the written application can be so construed as to mean that no premium, other than a nominal bid-bond premium, should become payable to appellant for said bonds, unless and until county bonds issued against the respective improvements had been actually sold. If the application is plain and unambiguous, it needs no construction, and it follows that a trade custom cannot be resorted to for the purpose of its interpretation, but, in the event of ambiguity, then the trade custom may properly be considered for the purpose of determining the true meaning, not, however, for the purpose of controlling express stipulations or modifying them by parol evidence.

By its application for the Christy bond, appellant agreed to pay, in advance, the premium or fees agreed upon, namely, for the proposal or bid-bond $——; for the full maintenance or guaranty period $1.50 per $1,000 of contract; for the contract or construction bond $3,071.05 for the first year or fraction thereof, and $3,071.05 per annum in advance thereafter. But the statute makes provision for but one bond, and that is the one that must be filed at the time the bid is made, and it must cover, each and all, the bid, the construction and the guaranty periods. As to the county, it was one bond, but, as between appellant and appellee, for premium purposes, it was first a bid-bond, next a construction bond, and finally a maintenance or guaranty bond, with a different premium, payable in advance, for each period. The court has so interpreted the agreement in the application, and we are in harmony

with the interpretation. Is the total premium covering the bidding, the construction and the maintenance to be paid at the time of the execution and delivery of the bond, or is each part thereof to be paid in advance of the period which it covers? From the application itself, and without some explanation as to its meaning, we are wholly unable to determine. Under such circumstances, it is proper, that we may understand the meaning, to consider the trade custom pertaining to such contracts, and the interpretation thereof by the parties themselves. This is what was done in this case. The rule is thus expressed in *Van Camp Packing Co.* v. *Hartman* (1890), 126 Ind. 177, 25 N. E. 901: "It is undoubtedly true that parties who contract in respect to a particular business, are presumed to do so with reference to any uniform practice which has been so long continued as to have ripened into a usage of the business to which the contract relates; and where the contract is silent, or terms of doubtful signification are employed, or when it is necessary in order to give the agreement effect, assuming it to have been made with the usage in view, it is competent to prove the usage so as to raise a presumption that the transaction in question was intended to conform to the known, usual, and ordinary course of the business. The usage may always be referred to for the purpose of showing the intention of the parties in all those particulars concerning which they have not expressed themselves with clearness and certainty in the contract, or where words have been used which have acquired a broader or different signification than that commonly attributed to them, the fact may be proved." Other Indiana authorities to the same effect are: *First Nat. Bank* v. *Arnold* (1901), 156 Ind. 487, 60 N. E. 134; *Morningstar* v. *Cunningham* (1887), 110 Ind. 328, 11 N. E. 593, 59 Am. Rep. 211; *Lyon* v. *Lenon* (1886), 106 Ind. 567, 7 N. E. 311; *Todd* v. *Howell* (1911), 47 Ind.

App. 665, 95 N. E. 279; *Cole* v. *Leach* (1911), 47 Ind. App. 341, 94 N. E. 577. For numerous authorities from other jurisdictions, see 17 C. J. 492.

The court finds that there is and was a general custom and understanding among bonding companies and contractors doing business in Indiana that the "construction bond" premiums do not accrue or become due until after the county or improvement bonds of the county have been sold, further finding as a fact that the general agent for the bonding companies so construed the contracts as set out in the written applications. Appellant, in support of his contention that there was but one time of payment of premium, and that at the time of the execution of the bonds, calls attention to appellee's answer to a question as to how long the work must be kept in repair after completion, was: "Construction bond only." But appellee, in its application, unequivocally agreed to pay one premium for the bid, another for the construction, and yet another for maintenance. Further, the bonds executed are not before us, and we must assume in their absence that the board of commissioners did their duty, and that they accepted only such bonds as the statute required, and these were required to cover the entire time from the respective bidding to the end of the maintenance period.

We do not need to consider, however, as to whether the bonds covered the maintenance period, for there is no attempt to recover the premium for that period. But, it seems to us that there is as much reason for doing so as there is for attempting to recover for a period of construction after the bonding company had gone into the hands of a receiver and the court in which the receivership was pending had decreed a cancellation of the bonds. It is to be kept in mind that such court decreed and adjudged that "as a matter of law no liability accrued on any of the policies, contracts or undertakings

of the American Bonding and Casualty Company for losses which occurred or damages which were sustained after the appointment of the permanent receiver on February 26, 1921." It is suggested that such Iowa court, by its decree of cancellation, in the absence of appellee and the board of commissioners, could not nullify the bonds given for the improvements here involved, but no such question is before us. Such action of the Iowa court seems to have been acquiesced in by the parties concerned.

The improvement bonds for the Christy Road were sold on February 25, 1921; for the Dodd Road No. 1, on August 16, 1921; for the Dodd Road No. 2 on September 10, 1921; for the Sidenbender Road, on July 1, 1921; and for the Hill Road, on January 1, 1922. Thus, it appears that, accepting the cancellation of the bonds on February 26 as valid, the bonding company, or appellant, as its receiver, had no bonds for the construction periods of the respective improvements. The applications expressly state that the work of construction was not to commence until the improvement bonds were sold. This was the only safe course that appellee could pursue, for the principle announced in the case of *O'Connor* v. *Board, etc.* (1924), 194 Ind. 386, 142 N. E. 858, that the contract for the improvement was only tentative, and contingent upon the validity of the improvement bonds, has equal application here. In that case, it was held that the improvement bonds having been disapproved, the contract in question was not a valid binding contract which the appellant could enforce.

Appellant argues that, if there were no mutuality of obligation, and neither the county nor appellee became bound until the bonds were sold, then the county and the public had no security in the meantime. It is clear that, if for any reason, the contracts should be without force, there would be no liability on

the bonds, and it is equally clear that, when the bonds, being valid, were sold, the contingent contract was then in full force, relating back to the date of its execution of and supported by the bonding company's bond, but, during this period of inactivity awaiting the sale of the bonds, there could have been no actual liability thereon, and this no doubt accounts for the fact that the bonding company, knowing that it was taking no risk for that period, was willing to accept a nominal premium of $5. Our answer to appellant's assertion that such construction is inconsistent with practical business policies, and opposed to settled rules of law, is that the court has found as a fact that there was a premium for the bond as bid bond, another for it as a construction bond, and yet another for it as a maintenance bond, and that there was a custom that the premium for the construction period was not payable until the improvement bonds were sold. Indeed, we may add that the custom is so well established as to have become a matter of common knowledge among those engaged in contracting for public improvements. Appellant calls attention to the fact that no amount is set out in the application as a premium for the "bid-bond." We assume that this failure to fill in the blank is an inadvertent omission, for, in each of the other applications, which are exhibits to the respective paragraphs of complaint, a premium of $5 is named. The facts in the case of *Rehm, Rec.*, v. *McCray* (1922), 78 Ind. App. 540, 134 N. E. 505, so confidently relied upon by appellant, are altogether different from the facts here. There it did not appear that there was any provision in the application for a bid-bond, a construction bond and a maintenance bond such as we have here. Nor was there any question of a trade custom to aid in the interpretation of an ambiguous contract. Further, in that case, appellee had alleged in his answer that the parties understood that the bond was not to be operative

unless and until the improvement bonds authorized for the purpose of such improvement were sold and a special fund created from which the contract price could be paid, and that the board of commissioners had refused to permit the appellee to commence the work. But the court stated that the evidence was not in the record, and, since the special finding was silent as to the facts alleged by appellee in his answer, it must be assumed that they were not proved. Here it is expressly found as a fact that the bonding company's general agent construed the contracts involved as providing for the payment of the "construction bond" premiums only after the county or improvement bonds were sold.

The court did not err in its rulings.

Judgment affirmed.