## BINGHAMPTON TRUST COMPANY *v.* AUTEN.

### Opinion delivered June 16, 1900.

TRUST COMPANY—POWER TO PURCHASE OR DISCOUNT NOTES is conferred on trust companies by the New York banking law of 1892, art. 4, providing that a trust company shall have authority "to purchase, invest in and sell stocks, bills of exchange, bonds and mortgages and other securities," and to invest moneys received by it in trust "in such real or personal securities as it may deem proper." (Page 296.)

Appeal from Pulaski Circuit Court, Second Division.

JOS. W. MARTIN, Judge.

#### STATEMENT BY THE COURT.

This is an action at law by the Binghampton Trust Company, a corporation organized under the laws of New York and doing business in that state, against the receiver of the First National Bank of Little Rock, on the following note:

"$5,000.          Little Rock, Ark., Aug. 20, 1892.

"On January 15, 1893, after date, we or either of us promise to pay to the order of the First National Bank five thousand dollars for value received, negotiable and payable without defalcation or discount at the First National Bank of Little Rock, Ark., with interest from maturity at the rate of 10 per cent. per annum until paid. [Signed] McCarthy-Joyce Co., by Geo. Mandlebaum, Sec. and Treas." Indorsed: "James Joyce. Geo. Mandelbaum. First National Bank, Little Rock, Ark."

The trust company received this note during August, 1892, in a letter from H. G. Allis, president of the bank, in which he stated: "We offer this as rediscounted by the bank, and the bank, of course, will pay at maturity, regardless of whether the parties desire renewals or not. If you can use paper, kindly remit proceeds to First National Bank, New York, for our credit, and advise us. H. G. Allis, President." The note was purchased or discounted by the trust company, and a dis-

count of seven per cent. per annum deducted from the face of the note, and the balance remitted to the First National Bank of New York, to be placed to the credit of the First National Bank of Little Rock. The complaint alleged that the makers and other indorsers were insolvent, and that payment could not be enforced against them.

The defense set up by the receiver was that, by the laws of New York, the trust company was forbidden to discount notes, and that the note sued on was discounted by the trust company in violation of the law, and was therefore void. On a trial before the circuit court this defense was sustained, and judgment rendered in favor of the defendant. Plaintiff appealed.

*Blackwood & Williams*, for appellant.

Under the laws of New York, as introduced in evidence, appellant was not prohibited from discounting notes. Under art. 4, c. 689, of the Laws of New York for 1892, appellant is a "banking corporation;" and under par. 4, § 21, c. 546, Laws (N. Y.) of 1887, it had power to make the transaction in question. The power given therein to *invest in* or *purchase* notes or to *loan money on personal securities*, includes power to "*discount*" or *purchase notes at a discount.* 10 Oh. St. 372; 82 N. Y. 291; 18 Barb. 456; 74 N. Y. 329; 82 N. Y. 291; 38 Mich. 430; 19 N. Y. 369; 38 Mich. 430; 14 Ala. 677; 8 Wheat. 338, 350; 13 Ala. 583; 37 Ind. 127; 92 Pa. St. 226; 23 N. Y. 244; And. Law Dict., "*Invest;*" Rap. & Law. Dict.; 79 Fed. 296. Defendant cannot plead that the act was *ultra vires.* That plea could be made by the sovereign only. 98 U. S. 627, 628, 629; Sedg. Stat. Const. 73; 47 Ark. 280–284.

*Hill & Auten*, for appellees.

For the laws of New York, introduced into evidence, see: Laws 1887, c. 546, p. 705, §§ 11, 20, 21, 27; see also 4 Rev. St. 1899, p. 2512; 2 *id.* p. 1578, § 296; Laws 1887. c. 546, p. 705, § 301; 2 Rev. St., c. 11, § 297; *id.* p. 1522, § 29; 3 *id.* p. 1723, § 4; Laws 1892, vol. 2, p. 1888, § 87. This is the law, as put in proof in the lower court, and it is all that can be noticed on appeal. 20 Ark. 136. Under the above

cited laws, the appellant had no authority to make the transaction in issue. 19 Johns. 1; 15 *id.* 358; S. C. 8 Am. Dec. 243; 2 Cow. 678; 7 N. Y. 364; *id.* 328; 8 Cow. 20; 21 N. Y. 490.

*Blackwood & Williams*, for appellant, in reply.

That the trust company had power to "discount" notes, see 52 N. Y. Supp. 941. It is not the policy of the legislature and courts of New York to restrain trust companies from discounting notes. 79 N. Y. 448; 139 N. Y. 185, 189. The cases in 77 N. Y. 64 and 79 N. Y. 437 are not opposed to appellant's position.

RIDDICK, J., (after stating the facts.) The question in this case is controlled by the laws of the state of New York. The plaintiff is a New York corporation, and the purchase or discount of the note sued on took place in that state, and the question presented is whether the transaction by which the trust company obtained possession of the note, and under which it claims the ownership thereof and the right to recover therefor, was lawful under the statutes of that state. We naturally feel some hesitation in interpreting the statutes of a distant state with the purpose and history of whose laws we are not very familiar; and this feeling is increased when, as in this case, only detached portions and sections of different statutes have been introduced in evidence for consideration by the court.

Among the laws of New York introduced in evidence is article four of the "banking law" (Laws of N. Y., 1892, c. 689), which article seems to be a general law covering the subject of trust companies in that state. It does not expressly state that it applies to all trust companies previously organized, but from the general scope of this law we think that it was intended to define the powers and duties of trust companies in that state generally, and is not confined to those only which were organized after the passage of the statute. This, as before stated, does not very clearly appear from article four itself, but we must remember that this article is only one chapter in a general statute known as the "Banking Law." If the whole of this banking law was before

us, it is probable that its scope and extent would more fully appear. In fact, the supreme court of New York, in a recent case in which this same trust company was a party, held that this act of 1892 applied to such company, though it was organized under the statute of 1887. *Binghampton Trust Co. v. Clark*, 52 N. Y. Sup. 941. This law was passed in the spring of 1892, and was in force at the time the trust company purchased or discounted the note in controversy, and we think it defines the powers that the company had in matters of that kind. Under this law it had authority to receive deposits and "to loan money on real or personal securities," to "purchase, invest in and sell stocks, bills of exchange, bonds and mortgages and other securities." And, again, the statute authorizes it to invest the moneys received by it in trust "in the stocks or bonds of any state of the United States, or in such real or personal securities as it may deem proper." We are of the opinion that these provisions of the statute gave it the power to discount or purchase the note sued on. The note was a personal security, and under the statute the company had power to purchase, invest in, or loan money on such securities. It seems to us that this would include the transaction by which the trust company became the owner of this note, whether that be called a purchase or a discount of the note. In either event it amounted to nothing more than an investment of money in a personal security, which the company was expressly authorized to do. We think that the company had substantially the same power under the law of 1887, for the terms of that law are very much the same as those of the act of 1892 above quoted; but we need not refer to that law, for it was superseded by the statute of 1892.

Counsel for appellee has called our attention to certain restrictive statutes of New York which forbid corporations not formed under, or subject to, the banking laws, and corporations not authorized by law, from "receiving deposits, making discounts, or issuing notes or evidences of debt to be loaned or put into circulation as money." Now, we think it is very clear that all of these restrictions do not apply to trust companies. For instance, there is in this law, as just stated, a restriction which forbids certain corporations from receiving

deposits; but this does not apply to trust companies, for they are expressly authorized to receive deposits, and one of the objects of the statute which permits their formation is to furnish a safe place of deposit for trust funds.

We are also of the opinion that these restrictive laws, so far as they forbid certain corporations from discounting notes, do not apply to trust companies, for the powers expressly granted to these companies to purchase, invest in, and loan money on personal securities include, as we think, the power to discount and purchase notes; and to hol1 that a trust company could not discount—in other words, purchase at a discount—a note owned by the bank would be to hold that the legislature forbade in one section what it had expressly authorized in another section of the same law.

The cases of *N. Y. Trust Co.* v. *Helmer*, 77 N. Y. 64, and *Pratt* v. *Short*, 79 N. Y. 437, cited by counsel for the bank, have no reference to trust companies organized or governed by statutes like those of 1887 and 1892, and we think those cases should not control our judgment here. On the other hand, the case of *Binghampton Trust Co.* v. *Clark*, 52 N. Y. Sup. 941, a case in which this same company was a party, seems to us to be a decision which fully supports our conclusion that the trust company had authority to purchase or discount notes. As this is a case recently decided, it is propable that the learned circuit judge did not have the benefit of it in his consideration of the case.

While, as before stated, we do not feel altogether sure about the law of New York, we nevertheless entertain no doubt as to what is right and just in this case. The bank disposed of the note to the trust company, secured by the bank's indorsement, and under a promise from its president that the bank would "pay at maturity, regardless of whether the parties desired renewals or not"; and the bank should have kept its promise. As the bank failed to perform any portion of its contract, we think that the trust company is entitled to the judgment asked. The judgment of the circuit court will be reversed, and judgment entered here for amount of the note and interest.

BATTLE, J., not participating.