## GILLETT v. THE CITIZENS NATIONAL BANK.

[No. 8,253. Filed March 31, 1914. Rehearing denied July 2, 1914. Transfer denied October 8, 1914.]

1. HUSBAND AND WIFE.—*Action on Note.*—*Sufficiency of Evidence.* —*Consideration.*—In an action by a bank on a note executed by a married woman, evidence showing that defendant had been indebted to the bank for money used in real estate investments, that she always depended upon her husband, who was president of the bank, from time to time to bring her renewal notes to be signed in renewal of her loan, that the note in suit was signed by her at her husband's request shortly after signing some renewal notes and that she signed it believing that it was for some portion of the loan theretofore made by her, that she also executed a mortgage describing such note and the renewal notes, that at the time of executing such mortgage, and subsequently on the failure of the bank, in conversation with persons representing

Gillett *v.* Citizens Nat. Bank—56 Ind. App. 694.

the bank, she admitted that the note was for a part of said loan, and that thereafter she discovered it was not for a part of such loan and that she had never received anything from the bank on account of said note, and that a thorough examination of the books and records of the bank failed to disclose how the note came into the bank's possession, or that any money had been paid to her or the existence of any debt on account of which the note was given, but disclosed circumstances indicating that its presence in the bank was irregular, was insufficient to show that defendant had received any consideration therefor, but on the contrary was consistent with the theory that the same was executed by her as surety for her husband.  pp. 697, 702, 706.

2.  HUSBAND AND WIFE.—*Liability of Wife.—Principal and Surety.* —Where a wife alone signs a note secured by mortgage on her separate real estate, and her husband receives the entire consideration, her liability is not that of principal, but her position is that of surety for her husband and no recovery can be had against her.  p. 701.

3.  HUSBAND AND WIFE.—*Bills and Notes.—Suretyship of Wife.— Evidence.*—The mere fact that a wife's name alone appears upon a note will not defeat her plea of suretyship, if the evidence discloses that she was in fact a surety, as the law looks through the form to the substance.  p. 701.

4.  HUSBAND AND WIFE.—*Action on Note.—Burden of Proof.*— Where a married woman alone signed a note secured by her mortgage on her separate real estate, the burden was upon her to prove that she received no consideration therefor.  p. 701.

5.  APPEAL.—*Review.—Consideration of Evidence.*—While the court on appeal can not weigh conflicting evidence, and must uphold the finding if there is any evidence to support it, the conflict which will preclude the setting aside of the finding must amount to more than a mere scintilla and must be composed of legal evidence, otherwise it is the court's duty to dispose of the evidence, and if there is not sufficient to sustain the finding, the judgment should be reversed.  p. 701.

6.  BANKS AND BANKING.—*Officers and Agents.—Representations of Third Persons in Transactions with Bank.*—Where a bank official, authorized by a person to transact business on his behalf with the bank, in the transaction of such business and while acting within the scope of his general authority as an officer of the bank, perpetrates a wrongful act whereby either the bank or such person must suffer, the loss must fall upon the bank, and this is true notwithstanding such official sustains the relation of husband to the person by whom the transaction was authorized.  p. 704.

From Superior Court of Vanderburgh County; *Fred M. Hostetter,* Judge.

Action by the Citizens National Bank against Grace L. Gillett. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*G. V. Menzies, A. C. Harris* and *Azro Dyer,* for appellant. *Woodfin D. Robinson* and *William E. Stilwell,* for appellee.

SHEA, P. J.—This action was brought by appellee on four promissory notes executed by appellant Grace L. Gillett, individually, and to foreclose a mortgage given by appellant and her husband on appellant's lands. The husband died after the action was brought, and before judgment. The complaint was in four paragraphs. The causes of action set out in the second, third and fourth paragraphs were paid and satisfied before judgment, so that the present controversy is based on the first paragraph only and the issues arising thereon. This paragraph declared on a promissory note of $4,500, dated December 10, 1909, payable thirty days after date, and in addition to the general denial, appellant filed an affirmative answer thereto averring coverture, no consideration and suretyship. Reply by appellee in general denial. The cause was tried by the court, and a general finding made in favor of appellee bank; that there remained due it on the note sued on in the first paragraph of complaint the sum of $5,377.31. The court rendered judgment for this amount against appellant, and decreed a foreclosure of the mortgage.

It is assigned that the court erred in overruling appellant's motion for a new trial. The only questions presented by counsel for appellant in their brief, in support of this assignment are: (1) The decision of the court is not sustained by sufficient evidence. (2) The decision of the court is contrary to law.

The facts appearing from the evidence are substantially as follows: In the latter part of 1909, appellee bank was in failing circumstances. Appellant had been for many

years prior to the occurrences herein set out a resident of the city of Evansville, Indiana. Her husband Simeon P. Gillett was from 1892, until January 15, 1910, president and manager of the Citizens National Bank. In 1893 appellant bought certain city lots in Chicago as an investment, borrowing the purchase money from the bank, and executing her individual notes therefor. As sales were made subsequently, the proceeds were applied on her bank debt, the unpaid balance being renewed from time to time. Throughout the Chicago deal Mrs. Gillett acted mainly upon the advice of her husband, and relied upon him to keep her informed as to the maturity of the notes, and remind her to sign the renewal notes at the proper time and in the proper amount. In the usual course, these renewal notes were signed by appellant at her home. Her husband, being president and manager of the bank, took up the matured notes by delivering the renewal notes to the bank. The evidence discloses that in December, 1909, appellant was indebted to the bank in the sum of about $7,200, and owned Chicago real estate of the estimated value of $5,000. On December 6, 1909, she signed three renewal notes for $3,882.75, $1,304.50 and $2,500, respectively, and executed a mortgage to secure the same. These were the notes in suit paid before judgment. It was the custom of the bank to number each note received and belonging to it with its distinctive number, and to record such note by its proper number in the discount register of the bank. The three renewal notes of appellant were accordingly on that day, December 6, 1909, duly registered in the discount register of the bank by their respective numbers, 114,569, 114,570 and 114,571. On December 10, 1909, four days thereafter, the note now in dispute was signed by appellant at the request of her husband while she was ill at home, that is to say, she signed a printed form of a promissory note which was entirely blank, reciting neither date nor amount, and returned it to her husband without inquiry as to the use to

be made of it. Nothing was said on that subject by either
party, although it was her understanding and belief at the
time that the note was to be used in renewal of some part
of her Chicago debt. However, in point of fact, so far as
the books of the bank disclose, she was not at that time in-
debted to the bank in any sum, her entire indebtedness hav-
ing been embraced in the three renewal notes made four
days before. Just where the blank note was kept during the
month following the signing of her name by appellant is not
disclosed by the evidence. It was next seen about January
12, 1910, when it was found among the notes and papers of
the bank, at which time it was in the form of a promissory
note as follows:

"Evansville, Ind., Dec. 10, 1909.
$4500 Thirty days after date I promise to pay to the
order of the Citizens National Bank of Evansville, In-
diana, Forty Five Hundred Dollars, and Attorney's
fees, with interest at six per cent. per annum Jan. 30/09
and until paid. Negotiable and payable at the Citizens
National Bank, of Evansville, Evansville, Indiana, with-
out any relief whatever from valuation or appraisement
laws, for value received. G. L. Gillett."

It appears to have been discovered by William L. Sworm-
stedt, who had been cashier of the bank from 1883 until
January 15, 1910, continuously. At that time the note bore
no number stamped upon its face, as was the custom with
respect to notes belonging to the bank. There was, however,
attached to the note by a pin, a slip of paper with a number
thereon, which number was much smaller than those running
in the discount register of the bank at that time. Sworm-
stedt made an examination of the books of the bank and dis-
covered that this smaller number corresponded with the
number used in the discount register of 1895, fifteen years
before, which number indicated a check of John J. Chandler,
dated July 13, 1895. The Chandler check was not produced
in evidence, and it does not appear that any witness ever
saw it, but as indicated in the discount register of that year

it was numbered 59,976 dated as above, for the amount of
$5,000 drawn by John J. Chandler on the Citizens Na-
tional Bank as payer. The column of the register used for
indicating payment remains blank. Chandler testified that
he never at any time drew a check for that amount on the
bank, and denies that he ever had any business dealings
with appellant. Appellant also testified that she never had
any business transactions with Chandler. From the day the
blank form of note was signed, December 10, 1909, until it
was turned over to the bank examiner, about January 5,
1910, no officer or employe of the bank ever saw the paper.
There is nothing to explain how or why the paper got into
the bank's possession. Appellant denies that she ever re-
ceived any consideration for the note, or derived any benefit
from it, either in her person or estate. It does not appear
in evidence that any officer or employe of the bank knew
anything of the note, or of any consideration for the note,
or that the bank had parted with anything on account of
it, except the fact that the note was found among the bank's
papers. The books and papers of the bank make no mention
of the note, or of any consideration for it, as far as the evi-
dence in this case shows. In answer to an interrogatory
which was read in evidence, the bank says there was nothing
in the books of the bank to indicate that the note was given
in renewal of any former indebtedness. During the sum-
mer of 1910, Manual Cronbach, a banker of experience, at
the instance of appellant's husband, made an examination
of the books of the bank covering the period of December,
1909, and again in May, 1911, he examined the books for
the express purpose of determining all the facts in connec-
tion with the note in controversy. His evidence shows that
it does not appear from the books of the bank that the
$4,500 note was carried as an asset; that according to the
books of the bank appellant did not get any money for it,
but that the books would disclose and did disclose that she
got nothing for the note. James C. Johnson, vice president

of appellee bank represented it throughout the trial of this cause. He testified in so far as he knew there was nothing in the books of the bank to show that appellant had received any consideration for the note; that there is no entry on the subject, and the books throw no light on the transaction; that except for the fact that the note was found among the papers of the bank, he could not say appellant had received any consideration for the note. At the time of signing the blank note, December 10, 1909, and for some time afterward, appellant believed that the note in dispute was to be used in renewal of some part of her Chicago debt. About January 10, 1910, in a conversation with Hilary Bacon, a director of the bank, she told him that her debt, in the bank represented her Chicago property; it came about by investments in Chicago real estate. She testified that at the time she acknowledged the mortgage, dated January 12, 1910, in which were included the three notes signed December 6, 1909, and the $4,500 note in controversy, she told Duncan C. Givens, attorney for the bank, that the bank debt represented her Chicago property; that it was money borrowed from the bank to pay for Chicago property. She continued to believe this until January 29, 1910, when she learned from her attorneys that the $4,500 note was not a renewal note, and that she was only surety thereon. She had in several conversations with persons interested in the bank prior to that time stated that the $4,500 note was her debt, under a misapprehension of the fact, as she claims. It is undisputed that she believed up to that time that it was a part of her debt to the bank occasioned by the purchase of her Chicago property, but from the time she received the information that it was not a renewal note she denied any liability thereon, and in a proposition made to the bank for the purpose of a compromise made April 6, 1910, the attorneys for appellant notified the bank in writing that she denied any liability on the $4,500 note for the reason, as stated therein, that she was only surety thereon. It was

upon this state of facts, practically undisputed, as we conceive it to be, that appellant insists there is no evidence to sustain the decision of the lower court, and that the decision is contrary to law.

We think three propositions may be taken to be thoroughly established, and citation of authority is hardly necessary to sustain them: (1) If, under the state of facts above set out, appellant received no consideration for the note, she could be held only as surety for her husband, who derived the benefit, if any was derived therefrom. (2) Being a married woman at the time of the execution of the note, she can not be held as surety. (3) The mere fact that her name alone appears upon the note will not defeat her plea of suretyship, if the evidence discloses that she was in fact a surety, as the law looks through the form to the substance.

The position of appellee with respect to the issues here is that the burden is upon appellant to show she received no consideration. This is true because of the fact that the note was signed by appellant alone, and the mortgage covered her separate real estate. The case of *Field* v. *Noblett* (1900), 154 Ind. 357, 56 N. E. 841, sustains appellee's contention in this respect. The court in that case at page 359 said: "But when the complaint is upon a note executed by the wife alone, and secured by a mortgage upon her separate real estate, there is no presumption that she is surety, and the burden is upon her to allege and prove that she executed the note and mortgage as surety, and not as principal, and the complaint in such case is sufficient, although no special facts showing that she was principal, and not surety, are alleged." So in this case, the burden is upon appellant to show that she received no consideration, and this doctrine is not controverted by appellant's counsel. This question is not of great importance in this case, however, as it can not turn upon the mere weight of the evidence, as the finding of the court must be

upheld if there is any evidence upon which to base it.   In
the case of *Wright* v. *Bertiaux* (1903), 161 Ind. 124, 129, 66
N. E. 900, the court said: "We are well aware that we
have no power to weigh the evidence and determine the
proved facts when a substantial conflict is found to exist.
But a conflict, to be recognized, must amount to more than
a mere scintilla, and be composed of legal evidence.   And
when it is alleged to exist, and it is shown to be made up
of incompetent evidence, or of testimony which is capable
of being reconciled with the great bulk of the evidence, so
as to give full faith and effect to all without doing violence
to any it becomes the duty of the court so to dispose of the
evidence—not weigh it—and when it is thus found that
there is not in the record legitimate evidence sufficient, if
considered alone, to establish all the material allegations
of the complaint, a judgment founded upon such a com-
plaint should be reversed. *Lake Erie, etc., R. Co.* v. *Stick*
[1896], 143 Ind. 449 [41 N. E. 365] ; *Cleveland, etc., R. Co.*
v. *Miller* [1898], 149 Ind. 490 [49 N. E. 445] ; *Habbe* v.
*Viele* [1897], 148 Ind. 116, 121 [45 N. E. 783, 47 N. E. 1]."
· In order that the facts may be clear, we quote the evi-
dence of the witnesses as to the statements made by appel-
lant.   Duncan C. Givens testified that Mrs. Gillett
1. said to him: "I admit this debt is all mine.   I
bought some property in Chicago.   Made some
money.   I dipped in again and lost.   That is the reason of
this debt."   This was at the time of the execution of the
mortgage dated January 12, 1910.   Hilary Bacon testified
that in a conversation with Mrs. Gillett about January 15,
1910, she said "she wanted it understood that that was her
debt.   She said I will tell you how it accrued.   I made an
investment in Chicago—bought some real estate there.   I
sold it and made some money and I made a second invest-
ment; that was where I made a mistake."   Sometime dur-
ing the month of August, 1910, in a conversation with Allen
Gray who was then the president of the bank, appellant

said: "I could beat your bank out of one of these notes if I so desired." This was in connection with some conversation concerning the transferring of certain property to the bank in settlement of her debt. These statements by Mrs. Gillett, together with the fact that the note was found in the bank, constitute the evidence upon which appellee relies to show that the note in question represented an indebtedness of Mrs. Gillett to the bank. On the other hand, an analysis of this evidence, taken in connection with all the facts and circumstances of the case, shows that when each of these statements was made, in which there is an apparent acknowledgment of the debt upon the part of Mrs. Gillett, there was a misapprehension on her part of the facts concerning her indebtedness to the bank. As shown by the evidence, she relied on her husband to keep her informed as to when her notes at the bank were due, furnish her with blanks for her signature and deliver said notes to the bank. The evidence nowhere discloses that she owed any other indebtedness to the bank of any kind or description whatsoever, nor is there any evidence from which a reasonable inference could be drawn that she owed any indebtedness other than as above stated, except that the note was found in the bank. The presumption of ownership which arises from the possession of the note by the bank must yield to the evidence which shows that the possession was not rightful, and that appellant received no consideration therefor. Appellant's statement and every substantial record that has been brought into the evidence in this case show that her debt to the bank arose wholly from her real estate transactions in Chicago. Nowhere is it shown by the records kept by the bank that Mrs. Gillett owed any debt except the debt with respect to the Chicago real estate. J. C. Johnson, then a national bank examiner, after a thorough and exhaustive research could find no record showing that Mrs. Gillett owed any debt to the bank except the Chicago real estate debt. Mr. Johnson in response to a question upon the witness

stand states that the books tend to show that Mrs. Gillett received no consideration for the note except the fact that the note was found among the notes of the bank. The evidence discloses that even if the note itself was not found until some time after the bank closed its doors, or at least it did not attract the attention of any of the officers or persons who examined the bank either on behalf of the bank or Captain Gillett. The circumstances under which the note was kept in the bank are not consistent with the theory that it was a part of the bank's assets.

In cases where a bank official acts in a dual capacity, that is to say, as a general agent for the bank and as special agent for an individual, the rights of the parties are clearly defined and may be thus stated: Where an officer of a bank is authorized by a person to transact business on behalf of such person with such bank, and such officer in the transaction of the business thus entrusted to him, and while acting within the scope of his general authority derived from the bank, perpetrates a wrongful act whereby either the bank or the person must suffer, the loss must fall on the bank for the reason that the bank deliberately gave the power which enabled the bank officer to do the wrong, whereas the innocent person merely afforded him the opportunity for doing it. The case of *Goshorn* v. *Peoples Nat. Bank* (1904), 32 Ind. App. 428, 69 N. E. 185, 102 Am. St. 248, announces the principle which has application to the facts in this case. A depositor in a national bank directed its cashier in writing to transfer $5,000 to a trust company of Louisville, Kentucky. The cashier used the writing to cover up his own previous embezzlements. In a suit by the depositor against the bank the trial court found against him on the theory that in undertaking to transmit the funds the cashier ceased to be the agent of the bank, and became the agent of the depositor, but the judgment of the lower court was reversed and this court held that the cashier was acting within the scope of

his authority from the bank, and the depositor must recover. In the case of *Smith* v. *Anderson* (1890), 57 Hun 72, 10 N. Y. Supp. 278, the facts as stated were that Mrs. Smith outside the bank gave the president of the bank money to be deposited in the bank to her account. The president wrongfully made the deposit in the bank to his own account as attorney in fact. In a proceeding against the estate of the bank it was held that Mrs. Smith was entitled to recover her money, the wrongful act of the president being the wrongful act of the bank. In the case of *First Nat. Bank* v. *Arnold* (1901), 156 Ind. 487, 60 N. E. 134, in order to procure a loan from another bank, the vice president and one of the directors signed a promissory note, and the president endorsed the note with the name of the bank. Although the directors did not authorize the endorsement and the bank received no benefit from the loan, and the proceeds were misapplied by the bank officers, yet the bank was held liable for the amount. In the case of *Carver* v. *Carver* (1876), 53 Ind. 241, 244, it was held that where a note by the wife was placed in the husband's hands for collection, he was not authorized to accept in payment anything but money. He could not receive payment in notes, horses or cattle. This doctrine has been adhered to in many other jurisdictions. *Smith* v. *Anderson, supra; Binghampton Trust Co.* v. *Auten* (1900), 68 Ark. 294, 57 S. W. 936; *Hobbs* v. *Boatright* (1906), 195 Mo. 693, 93 S. W. 934, 5 L. R. A. (N. S.) 906, 113 Am. St. 709; *Citizens Bank* v. *Bank of Waddy* (1907), 126 Ky. 169, 103 S. W. 249, 11 L. R. A. (N. S.) 598, 128 Am. St. 282; *Grand Rapids Safety Deposit Co.* v. *Cincinnati Safe, etc., Co.* (1891), 45 Fed. 671; *First Nat. Bank* v. *Dunbar* (1886), 118 Ill. 625, 9 N. E. 186; *Heim* v. *First Nat. Bank* (1906), 76 Neb. 831, 107 N. W. 1019; *Rankin* v. *City Nat. Bank* (1908), 208 U. S. 541, 28 Sup. Ct. 346, 52 L. Ed. 610; *Daniels* v. *Empire State Sav. Bank* (1895), 92 Hun 450, 38 N. Y. Supp. 580. We think

it is clear in this case that even though the relation of husband and wife was sustained, the bank can not escape liability for the acts of its president in misappropriating or misapplying the funds derived from the discount of this note, if, in fact, it should be shown by the evidence that the bank sustained any loss on account of it.

The evidence which is set out with great particularity in the briefs can be readily reconciled upon the theory that the bank sustained no loss on account of this particular note. A fair conclusion from all of the evidence is that the note was simply used to cover up another transaction in which the bank may have sustained loss, but with which appellant in this case had no connection whatever, and therefore could not be chargeable under any circumstances with any loss thus sustained. We are of the opinion that all of the evidence in this case can be readily and consistently reconciled upon the theory that appellant received no consideration for the note in question. There is therefore, no substantial conflict, as the mere scintilla of evidence which may be said to exist contrariwise does not require the court to weigh it to reach a conclusion. Therefore, conceding for the instant that appellant's husband discounted the note and used the proceeds for his own benefit the most that can be said is that appellant was surety for her husband, which, under the issues, she is not estopped to say, and therefore there can be no recovery in this case as against appellant, as it is clear that the bank gave its president the power for wrongdoing while appellant furnished only the opportunity.

The decision of the lower court is contrary to law and is not supported by the evidence. Judgment reversed.

NOTE.—Reported in 104 N. E. 775. As to estoppel against married women, see 57 Am. St. 169. As to suretyship of a wife under a mortgage of her separate property for her husband's debt, see 5 Ann. Cas. 643; Ann. Cas. 1912 D 108. See, also, under (1) 21 Cyc. 1571; (2, 3) 21 Cyc. 1321; (4) 21 Cyc. 1567; (5) 3 Cyc. 363; (6) 16 Cyc. 773.