## REHM, RECEIVER, *v.* MCCRAY.

[No. 11,244.   Filed March 15, 1922.   Rehearing denied May 31, 1922.   Transfer denied October 5, 1922.]

1. PRINCIPAL AND SURETY.—*Surety Contract.—Construction by Parties.— Failure to Demand or Pay Premium.— Statutes.*— Where a bonding company furnished a bond to a road contractor to be submitted with his bid on a proposed highway improvement, as required by §7723 Burns 1914, Acts 1901 p. 521, the failure of the company to demand payment of the premium, or the principal's failure to pay, at any particular time, did not amount to a construction by the parties that the premium was not to be paid until the work under the contract should actually be commenced.   p. 544.

2. PRINCIPAL AND SURETY.—*Road Contractor's Bond.—Time of Payment of Premium.*— Where a road contractor submitted surety bond with his bid on a proposed highway improvement, as required by §7723 Burns 1914, Acts 1901 p. 521, the application for the bond being dated January 26, on which date the application was accepted, the bond signed, and the proposal and bid made and accepted and the contract awarded and entered into, the liability of the bonding company attached and the consideration for the execution of the contract passed on such date, and the premium which was to be paid on that date became due and payable, notwithstanding that subsequently the contract for the proposed improvement was canceled before the commencement of work thereunder.   p. 546.

3. PRINCIPAL AND SURETY.—*Bonds.—Release of Surety.—Power of County Commissioners.*—Where a county board of commissioners, after having accepted a bid for a proposed highway improvement, canceled the contract on the petition of the contractor and released the bond furnished in pursuance to §7723 Burns 1914, Acts 1905 p. 521, the action of the board did not release the contractor from his agreement with the bonding company to pay the premium for the bond.   p. 546.

From Marion Circuit Court (33,529); *Harry O. Chamberlin,* Judge.

Action by John E. Rehm, receiver of the Lion Bonding and Surety Company, against George W. McCray. From a judgment for defendant, the plaintiff appeals. *Reversed.*

Rehm, Rec., *v.* McCray—78 Ind. App. 540.

*Fitzpatrick & Fitzpatrick,* for appellant.

*Hottel & Patrick,* for appellee.

MCMAHAN, J.—This is an action by appellant against appellee to recover a premium alleged to be due on account of a surety bond signed by the Lion Bonding and Surety Company as surety for appellee. From a judgment against appellant he appeals and contends that the court erred in its conclusions of law. Since the only questions raised relate to the correctness of the conclusions of law, it will not be necessary to set out the pleadings.

The facts as found by the court are in substance as follows: A petition was filed with the board of commissioners of Marion county for the improvement of a certain highway and such proceedings were duly had thereafter as resulted in the petition being granted, the highway ordered improved, and proper notices for bids for the construction of said improvement were given as provided by law. Appellee, desiring to bid upon said improvement and desiring the services of said bonding company, of which appellant is receiver, as surety on a bond to accompany his bid, and in order to induce said surety company to execute such bond as surety, executed a written application for such bond wherein he agreed to pay said company as a premium or charge for the bond so applied for the sum of $476.25, being at the rate of $15 per $1,000 on the contract, in advance for one year or fraction thereof and a like sum in advance each year annually thereafter until appellee should serve upon said bonding company written evidence showing that said company had been fully discharged and released from all liability upon said bond, and to indemnify and save it harmless against all losses, costs, charges, and expenses including attorneys' fees by reason of any action or default of appellee, a copy of said application signed and accepted by appellee being set

out in full. Said company accepted said application and on January 16, 1920, signed and executed as surety for appellee a bond as applied for in the sum of $65,200, wherein it was covenanted that if the board of commissioners should award appellee the contract and appellee should promptly enter into a contract with the board of commissioners for said work, should well and faithfully perform the same according to the time, terms, and conditions specified in the contract and should promptly pay all debts incurred by him in the prosecution of said work the obligation should be void, otherwise to remain in full force. Appellee filed his bid with the auditor of said county for said improvement and accompanied the same with said bond. Said bid and bond were accepted by the board of commissioners and the contract for improvement of said highway awarded appellee. Appellee thereupon entered into a contract with said board of commissioners for the improvement of said highway. Later the commissioners took the necessary steps for the legal issuance of improvement bonds for the purpose of raising the necessary funds to pay for said improvement. The issuance of said bonds was approved by the state tax board, and were advertised for sale. Appellant, prior to the beginning of this action on October 26, 1920, demanded from appellee the payment of said sum of $476.25 as premium due appellant for services in and about the execution of said bond. Appellee failed and refused to pay, and appellant was compelled to and did employ attorneys to prosecute this action, and the services of such attorneys are of the value of $150. On March 24, 1921, appellee filed his petition with the board of commissioners asking that said contract be canceled, said bond be released, and appellant and appellee be released from further liability by reason of said bond and contract. Said petition was granted, said contract can-

celed, appellant and appellee released from further liability, and appellee furnished appellant with written evidence of such release.   The contract between the board of commissioners and appellee provided that for the construction of said improvement, appellee should be paid out of a special fund to be derived from the sale of bonds to be issued and sold in the matter of said improvement.   The commissioners failed to sell said improvement bonds and thus failed to create a special fund.   Appellee did not at any time engage in any construction work under said contract with the board of commissioners and incurred no liability of any kind to any person for work, materials, or supplies connected with or growing out of said improvement other than whatever liability may be due appellant by reason of the execution of said bond by the bonding company as surety.   Upon these facts the court concluded as a matter of law that appellant was entitled to recover nothing.

Appellee contends that the contract between appellee and the bonding company is indefinite and ambiguous, in that it does not provide when the premium becomes due and payable except that it is payable in advance. His contention is that it is not clear whether the premium for the first year was payable when the bond was issued to appellee, or when the contract for construction of the highway was executed, or when the construction work should be commenced by appellee, and that if the facts, as found by the court, show that the parties by a practical interpretation of the contract have eliminated this uncertainty we should adopt that construction in determining when the premium was due and payable.   It is insisted that the failure of the bonding company to require payment of the first year's premium in advance of accepting appellee's application for a bond or at the time the contract was awarded appellee or at the time appellee entered into the contract with the

board of commissioners together with the failure of appellee to pay said premium on either of those occasions constituted a practical construction by the parties indicating that the premium was not due or payable on either of those times and that it was contemplated by the parties that it should not be due or payable until appellee actually entered upon the work of constructing the highway.

Appellee cites a number of authorities holding that where the meaning of a contract is indefinite, obscure or ambiguous the court will consider, and under certain conditions will adopt the construction and interpretation placed thereon by the parties. Appellant however contends that the contract is not ambiguous or uncertain and that upon the acceptance of appellee's bid for the construction of the proposed highway together with the approval of the bond and the awarding of the contract to appellee the liability by reason of said bond attached and that the premium was then due and payable.

Section 7723 Burns 1914, Acts 1905 p. 521, required appellee to submit with his bid a bond to the approval of the board conditioned that appellee would enter into a contract and for the faithful performance of work, and that such bond should be for the benefit of any person or corporation who should suffer by reason of appellee's failure to enter into proper contract to perform such work or to carry out the same in any manner or pay for any labor or material furnished him.

We cannot agree with appellee's contention that the failure of the bonding company to demand payment at any particular time and appellee's failure to pay

1. at any particular time can be construed as a construction by the parties that the premium was not to be paid until the work under said contract should be actually commenced. Appellee in his answer alleged in substance that the parties understood and agreed

that the bond was not to be operative unless and until the improvement bonds authorized for the purpose of such improvement were sold and a special fund created from which the contract price could be paid, and that the board of commissioners had refused to permit appellee to commence the work.

The evidence is not in the record, and since the special finding is silent as to the facts alleged by appellee in his answer we must assume that such facts were not proven.

Appellee in his application for a bond expressly agreed "to pay to the company, as a premium or charge for the bond applied for, the sum of $476.25, being at the rate of $15 per $1,000 of the contract amount in advance for One year or fraction thereof, and the sum of $........., being at the rate of $15 per $1,000 of the contract amount in advance annually thereafter, * * *." This agreement was acknowledged by appellee before a notary public January 16, 1920. Not only was this application acknowledged January 16, but that is the day when the bond was signed by appellee and the bonding company, the day that appellee submitted his bid and proposal, the day when the contract was awarded him and the day on which the contract between appellee and the commissioners was entered into.

Appellee under the law was required to submit with his proposal and bid a bond with surety to the approval of the board of commissioners. In the absence of such a bond appellee's proposal and bid was subject to and doubtless would have been rejected by the board of commissioners. Appellee, being desirous of having his proposal and bid accepted and desiring to be in a position to be awarded the contract in case his bid was accepted by the commissioners, applied to the bonding company

for a bond and agreed to pay it a certain sum as a premium or charge for becoming surety on his bond.

Appellee in this connection contends that there was an understanding and agreement between appellee and the bonding company that appellee was not to 2. pay the premium for the bond unless the commissioners actually sold the bonds which they were to issue for the purpose of creating a fund for the payment of the cost of making the improvement, and that since the bonds were never sold appellee is not liable on his agreement to pay the premium. The facts found, however, do not support this contention. In fact, no such inference can be drawn from the facts. While the application made by appellee is dated January 3, it was acknowledged January 16, and as before stated, the application was accepted, the bond signed, the proposal and bid made and accepted, the contract awarded and entered into January 16, and it is clear to us that the liability of the bonding company attached and the consideration for the execution of the contract sued on passed from the bonding company to appellee the same day and that the premium then became due and payable. We therefore hold that upon the acceptance of appellee's proposal and bid and the awarding of the contract to him, the liability of the bonding company by reason of its bond attached and that appellee's liability to pay the premium named in said application then became due and payable.

It is not necessary for us to determine whether the board of commissioners had any authority to release appellee from the contract and to cancel the bond. 3. But we do hold that such action of the board did not release appellee from his agreement to pay the premium for which this action was brought. *American Bonding Co.* v. *Hall* (1914), 57 Ind. App. 523, 106 N. E. 534.

The judgment is therefore reversed with directions to the trial court to restate its conclusions of law in accordance with this opinion, and to render judgment in accordance therewith.