UNITED STATES FIDELITY & GUARANTY CO. *v.*
FREEDMAN ET AL., EXRS. AND TRUSTEES.

(Decided January 5, 1925.)

*Messrs Harmon, Colston, Goldsmith & Hoadly,* for plaintiff in error.

*Messrs. Pogue, Hoffheimer & Pogue* and *Mr. Oliver S. Bryant,* for defendants in error.

BUCHWALTER, J. The plaintiffs below, defendants in error here, brought an action against the United States Fidelity & Guaranty Company, a corporation under the laws of Maryland, to recover $1,000, with interest, which had been paid by them to the defendant company as a premium on a bond. The plaintiffs were Samuel Freedman and Herman B. Richard, and, Richard having died while the action was pending, the cause was revived in the names of his executors, Edward J. Richard and Rena S. Richard.

The facts are not in dispute, the cause being tried on an agreed statement of facts.

Samuel Freedman and Herman B. Richard were doing business as partners under the firm name of Freedman & Richard, and, on June 23, 1920, being desirous of obtaining a wholesale liquor dealer's permit from the United States government under what is known as the National Prohibition Act (Title 27, U. S. Code), made an application to the government for such a permit. The National Prohibition Act and the regulations thereunder pro-

vided that those persons desiring permits, except in certain instances, must, at or before the time of the filing of the application therefor, file with the federal prohibition director a bond to insure compliance with the provisions of the act, and of the regulations, as well as to cover any taxes and penalties which might be imposed under the Internal Revenue Law.

It was necessary, therefore, in order to comply with the act, to tender such a bond with the application for the permit. The bond was executed by the defendant upon the prescribed form, in the sum of $100,000, and plaintiffs paid defendant as premium the sum of $1,000.

This application and bond, executed in June, 1920, was promptly filed with the United States government, and, on August 31, 1921, the prohibition director notified the plaintiffs that the permit was not issued, and returned the bond in question to the plaintiffs. who, in turn, notified the defendant company, forwarded the bond to its authorized agent, and demanded the return of the premium, which was refused.

The defendant claimed that the bond remained in full force and effect until about the 31st day of August, 1921, and asked that it be given judgment for the sum of $1,000 for the premium for the year beginning June 24, 1921.

In the application for the bond, signed by the plaintiffs, there is the following:

"We certify that the answers given to the foregoing interrogatories are true, and in consideration of the United States Fidelity and Guaranty Company consenting or agreeing to execute, or guar-

antee the bond herein applied for, $100,000, does [do] hereby covenant, promise and agree to pay the premium or fees hereinafter agreed upon, to-wit: one thousand ($1,000) Dollars per annum.''

Plaintiff in error contends that the consideration in the contract was the execution of the bond which the plaintiffs desired; that without such execution their application for a permit could not have been filed; that the existence of a liabilty on the bond was not the consideration; and that whether or not there should be such liability depended on circumstances beyond their control. If this construction is to be adopted, it is to be noted that the application calls for the payment of $1,000 per annum, and if the consideration was merely for the execution of the bond, and not for liability thereunder, and the government retained the bond and the application for a permit, without issuance of a permit, the plaintiff would be under the duty of paying $1,000 per annum, as stipulated in the application to the defendant company. So that it can hardly be fairly contended that the premium was only for its execution.

The mere fact that by cross-petition the defendant company asked for a premium beginning June 24, 1921, and is here urging the allowance of that claim, would almost preclude the theory of the payment being for the execution of the bond.

It appears from the various exhibits contained in the bill of exceptions that the bond was to take effect and be in force upon the granting of the permit. The bond is designated a bond securing the compliance with the provisions of the National Prohibition Act and regulations issued pursuant

thereto, and permit issued thereunder, and contains the following provisions:

"Whereas, the above bounden principal has made application for the issuance of a permit under the National Prohibition Act and regulations issued thereunder, and whereas, it is intended by this instrument to also insure compliance with Internal Revenue Laws and regulations issued thereunder.

"Now, therefore, the condition of this obligation is such that if there be no material false statement in the application for such permit, and the said principal shall not violate the terms of such permit issued to him by the Commissioner of Internal Revenue, or any person authorized by provisions of the National Prohibition Act and regulations promulgated thereunder as now or hereafter provided, and all other laws of the United States now or hereafter enacted respecting distilled spirits, fermented liquors, wines, or other intoxicating liquors, and will pay all taxes, assessments, fines and penalties incurred or imposed upon him by law, then this obligation to be void, otherwise to remain in full force and effect."

The application for the permit, which is incorporated in the agreed statement of facts, contains the following:

"It is hereby certified that the undersigned has not within one year prior to the date hereof violated the terms of any permit issued under the National Prohibition Act or any laws of the United States or of any State regulating traffic in liquor, and will observe the terms of any permit issued pursuant to this application and the provisions of all laws and

regulations relative to the acts for which a permit is issued.''

Section 6 of Title 2 of said act (Title 27, Section 16, U. S. Code), in providing for the bond, states that it is ''to insure compliance with the terms of the permit and the provisions of this title'' and of these regulations as well as to cover any taxes and penalties which may be imposed under the Internal Revenue Laws.

The whole transaction discloses that the bond, although required to be forwarded with the application, insures against improper actions of the plaintiff when a permit has been issued. There could not be any liability on the part of the defendant to the United States government if no permit was issued. The fact that the bond was returned when the permit was refused further bears out the construction the government placed thereon. Until a permit was issued, no risk attached or could attach to the bond.

It has been urged by the plaintiff in error that this bond should be construed under the terms of suretyship, and that the mere signing of the bond and placing it in the hands of the plaintiffs was sufficient to entitle it to the payment of the premium. The authorities generally, however, hold that the guaranteeing of such bonds for a money consideration by a surety company, organized for such business, should be construed under the laws of insurance.

''A class of contracts generally designated as guarantee insurance has been before the courts in numerous cases for adjudication. This class comprises fidelity, title, credit, bond and contract guar-

anty generally, and after much discussion it seems to be well settled that these contracts are essentially those of insurance where the companies engage in business for profit and where the terms of the contract itself closely resemble the essential elements of an insurance contract, so that the rights and liabilities of the parties are governed by the rules of construction applicable to insurance rather than by the rule *strictissimi juris* which determines the rights of ordinary guarantors of sureties without pecuniary consideration.'' 1 Joyce on Insurance (2d Ed.), Section 339.

''The bonds or contracts of those companies which guarantee the fidelity of employees and which make the business one for profit are essentially insurance contracts. This is well settled, not only by express adjudications but also inferentially by those decisions where these contracts are involved but where the point is not discussed as it is evidently conceded by the contract being dealt with as one of insurance.'' Id., Section 339a.

''The rule that bonds of surety companies who engage in the business for profit, are essentially insurance contracts governed by the rules of construction applicable thereto rather than by the rules applicable to suretyship applies also to building contractor's bonds.'' Id., Section 339f.

''The rule above stated applies to credit guaranty contracts.'' Id., Section 339h.

Well-known cases to this effect are the following:

*Guarantee Co. of North America* v. *Mechanics' Sav. Bank & Trust Co.* (C. C. A.), 80 F., 766, wherein the bond in question was a fidelity bond, and the court, at page 772, states: ''While, in contracts like

this, the more natural attitude of a 'surety' is assumed by the form, it is, in effect, one of insurance.''

*National Surety Co.* v. *McCormick* (C. C. A.), 268 F., 185, at page 188: ''It is urged that the rule of strict construction generally applicable to the obligation of sureties should be here applied. But this is not that ordinary contract of voluntary suretyship, as to which there has arisen a sort of tenderness toward sureties. This is a contract of insurance, entered into by the surety for the revenue which it derives from the business of suretyship, and in this relation the obligation should be treated as other insurance contracts, which are usually construed most strongly against the insurer.''

*American Surety Co.* v. *Pangburn,* 182 Ind., 116, 105 N. E., 769, Ann. Cas., 1916E, 1126, paragraph 3 of the syllabus: ''While an ordinary accommodation surety is entitled to stand on the strict letter of his contract, such rule does not hold in the case of a surety for hire, and the contracts of the latter are controlled by the law applicable to the construction of insurance contracts.''

Plaintiff in error has cited the following authorities to support the claim that it was entitled to such premium:

*McDonald* v. *Manning,* 19 Canada Sup. Ct. Rep., 112. In that case the surety indorsed a note and turned it over to the agent of the maker. It was in their power to negotiate it at any time, and the court held, at page 117: ''The risk for which appellant was to be paid the $1,000 attached so soon as the note left his hands.''

In the instant case, it was not within the power

of the defendants in error, by any act of theirs, to cause any liability to arise on the bond. It was a matter entirely within the control of the government, as both parties knew.

*New Amsterdam Casualty Co.* v. *Olcott,* 165 App. Div., 603, 150 N. Y. S., 772. This case involved a policy of casualty insurance covering risks under the Workmen's Compensation Law, which was later declared unconstitutional. The court held that the risk existed while the law was in force, and the policy itself provided that it was agreed that "such earned premium shall be retained by the company regardless of the construction which may be given by the courts to the law referred to herein." The reference was to the Compensation Law.

*Mizell* v. *Elmore & Hamilton Contracting Co.* (C. C. A.), 215 F., 88. This was a case where a bond was given for the faithful performance of work under a contract. The contractor entered upon the work, which was later stopped by injunction. The contract was declared by the court to be invalid. The surety company was held to be entitled to the premium. But in that case the court states: "The surety company was not required to examine into the legality of the contract. Good or bad, it was the contract which the Elmore & Hamilton Company wished guaranteed."

In the case at bar, nothing was guaranteed until a permit should be issued.

In *Rehm* v. *McCray,* 78 Ind. App., 540, 134 N. E., 505, a bond was furnished to a road contractor to be submitted with his bid. It was submitted, and the contract awarded to him. The court held that liability attached at that time, and the premium was

then due, and the fact that the contract was later canceled did not release the contractor from liability for the premium.

In the case at bar liability never attached.

Holding that this contract is to be construed under insurance laws, and finding further that no risk ever attached, the permit not having been issued, no premium was earned, although received.

"Insurance is a contract. Its very definition imports the payment of a consideration or price on the part of the assured, and the assumption of a risk or peril by the assurer. The premium or cost of insurance is fixed or adjusted with reference to the risk or peril assumed. Premium and risk are both of the very essence of the contract, and each is dependent upon and inseparable from the other. The very life of the contract involves the presumption of a risk, and the assurer is paid the premium or price of insurance to take upon himself the peril or event insured against. It therefore necessarily follows that if the risk has not attached, or if no part of the interest insured is exposed to any of the perils insured against, the insurer has no claim to the premium; if paid, it must be returned in the absence of fraud by insured." 3 Joyce on Insurance (2d Ed.), Section 1390.

"It is a principle of almost elementary character that, if risk has once attached, there can be no return of the premiums. * * * It would seem to be equally obvious that, if the policy does not attach, the insured, in the absence of any fraud on his part, is entitled to recover the premiums paid." 2 Cooley on Insurance (2d Ed.), page 1730.

The same question has been passed on in Ohio

in the case of *Insurance Co.* v. *Pyle,* 44 Ohio St., 19, 4 N. E., 465, 58 Am. Rep., 781:

Syllabus 2: ''When a life policy is issued and accepted upon the expressed condition that the answers and statements of the application are warranted true in all respects, and that if the policy be obtained by any untrue answer or statement, or by any fraud, misrepresentation, or concealment, 'the policy shall be absolutely null and void;' and, as to matters material to the risk, some of the answers and statements are untrue in fact, though made without actual fraud and under an innocent misapprehension of the purport of the questions and answers, no contract of insurance is thereby made, and the policy does not attach, but it is void *ab initio.*''

Syllabus 3: ''When, for such a policy, premium has been paid by the applicant to the insurance company, such payment may be recovered back.''

See, also, *Seaback* v. *Met. Life Ins. Co.,* 274 Ill., 516, 113 N. E., 862.

Under the above authorities, no liability having attached to the defendant company because of the execution of the bond in question the plaintiff was entitled to recover the premium paid.

We find no error prejudicial to the plaintiff in error, and the judgment rendered in the court of common pleas will be affirmed.

*Judgment affirmed.*

CUSHING and HAMILTON, JJ., concur.