AMOS THOMAS, AGENT, APPELLANT, v. MARION O. LAND ET AL., RESPONDENTS.—30 S. W. (2d) 1035.

Kansas City Court of Appeals. May 5, 1930.

*John C. Landis, Jr., John C. Landis, III,* and *Wm. H. Utz* for appellant.

*Mayer, Conkling & Sprague* for respondent.

ARNOLD, J.—This is an action to recover an unpaid premium for a surety bond. Plaintiff is the liquidating agent for the matters here in question for the department of trade and commerce for the State of Nebraska, a duly organized and existing department of that State, and, as such, was authorized to take charge of and administer the affairs of insolvent insurance companies within said State, under and by virtue of section 3, chapter 190, article 3, Session Laws 1919.

Under the provisions of said laws of the State of Nebraska, by regular order of court in and for Douglas County, the following was made of record:

(1) The Department of Trade and Commerce of Nebraska had filed a petition alleging that after an examination of Lion Bonding and Surety Company said company was in such condition that its further transaction of business was hazardous to policy holders, creditors, stockholders and the public, and had been violating the law, and said petition prayed for authority to take possession of said Lion Bonding & Surety Company, and

(2) That the court found the allegations of the above petition to be true, and

(3) Ordered the Department of Trade and Commerce to take and retain possession of the business and records of the bonding company until such time as it should be shown to the court that the cause for the order shall have been removed.

On May 28, 1921, in accordance with a petition theretofore filed alleging the insolvency of said bonding and surety company, a corporation organized and existing under the laws of the State of Nebraska, the court entered a supplementary order directing the department of trade and commerce to take charge of and liquidate the

business of the said Lion Bonding & Surety Company. The said court, by order dated at Omaha, Nebr., March 11, 1924, approved the appointment of one Lee Hardman, as special agent of the Department of Trade and Commerce, to take charge and have control of the matter of winding up the affairs of said Bonding Company, effective on the 1st day of April, 1924. Thereafter, on January 2, 1926, by proper order, the court relieved said Lee Hardman as special agent and appointed one Amos Thomas to act as such special agent.

Defendants are a co-partnership, doing business under the firm name of Land & Sampson, engaged in the contracting business and located at St. Joseph, Missouri. The amended petition charges that on November 9, 1920, the Platte River Drainage District No. 1 of Buchanan County, Missouri, through its board of supervisors, entered into a contract with defendants to execute and complete work and improvements required by the plans and specifications with respect to a certain reclamation project and to furnish all material and labor necessary therefor, in compliance with certain stipulations; that, in connection therewith, defendants were required to execute a surety bond in the penal sum of $110,000; that for and in consideration of $3220.44, and pursuant to a written application, the Lion Bonding & Surety Company executed a bond in said penal sum of $110,000, indemnifying said drainage district against loss on account of any failure of defendants to carry out the terms of said contract; and to pay any and all sums of money which might have been expended by the said drainage district on account of any default of defendants in connection with said work.

The petition alleges that, subsequent to the execution and delivery of said surety bond, the said Bonding Company became insolvent and its affairs were taken over by the Department of Trade & Commerce of Nebraska, of which plaintiff is the liquidating officer; that subseqeunt to the insolvency of said Bonding Company, all provisions of said contractor's bond were carried out and complied with, and the same remained in full force and effect until the completion and acceptance of the work and until all claims of every kind and character were paid and discharged; that demand has been made on defendants for the payment of the premium of said bond which was refused. Judgment is asked in the sum of $3220.44, with interest and costs.

The answer admits the application for, and execution of, the bond as alleged in the petition and, as affirmative defense pleads a total failure of consideration for said bond and the premium thereon; that, prior to April 12, 1921 and on that date said Bonding Company was insolvent; that it committed a breach of said bond and contract and was unable to carry out and perform the provisions of the contract as stipulated in the alleged bond; that, at the February term, 1921, of the District Court of Douglas County, Nebr., the court

declared the said Bonding Company "to be in such a condition that its further transaction of business would be hazardous to its policy holders, its creditors, its stockholders, and to the public," and directed the Department of Trade & Commerce to take possession and conduct its business until such time as, after a hearing, it should appear that the cause of the order had been removed.

It is further pleaded in the answer that the contract between defendants and said drainage district provided said work should begin May 1, 1921, and that such fact was known to the said Bonding Company; that the application for said bond recited the work for said drainage district was to be started not sooner than May 1, 1921, and such recital was known to said Bonding Company on November 9, 1920; that the work under the provisions of said contract did not, in fact, begin until July, 1921, which fact was known to said Bonding Company and to plaintiff herein; that said Bonding Company incurred no liability whatever by the issuance of said paper writing or the issuance of said alleged bond, filed prior to and before the said Bonding Company incurred any liability thereunder, and before either the said drainage district or defendants derived any benefits therefrom; that before either defendants or said drainage district derived any benefit or advantage therefrom, the said Bonding Company became and was unable to perform any of the conditions of said alleged bond; that because of the insolvency of said Bonding Company, and because of its inability to perform any of the conditions of said alleged bond, the said drainage district refused to accept said alleged bond and required defendants to give a new and different bond at a cost to defendant of $800.00, before permitting defendants to proceed with the work; which said new and different bond was given after April 12, 1921, and which said bond remained in force until after the completion and acceptance of the work and payment of all claims arising thereunder; that, by virtue of the terms of the said alleged bond of Lion Bonding & Surety Company, and by virtue of the agreement between it and defendants, at the time of its issuance, the same did not become effective before the work under the contract with the drainage board was begun, and the premium thereon did not become due until defendants were paid enough on said contract with the drainage district to pay said premium.

Defendants specifically deny that said alleged bond, executed by the Lion Bonding & Surety Company on November 9, 1920, was in effect until the completion and acceptance of the work done under the contract with the drainage district, and deny that said bond was ever in effect; they state said Bonding Company was unable to, and did not, carry out and comply with the terms of said alleged bond and did not comply with the application of the defendants for a bond.

The answer further avers that defendants never agreed to pay any premiums whatever to the Bonding Company; deny they are indebted to said Bonding Company or to plaintiff herein, and deny that payment was ever demanded for said alleged premiums. The answer further states defendants did carry out the terms of the contract with the drainage district in all respects; that they furnished all labor and materials and paid all sums of money due therefor; that the said drainage district, nor any other person, partnership or corporation, entitled to rely upon any bond in connection with the work under said contract ever asserted, or now asserts, any claim against either the defendants or the drainage district; nor was the said Bonding Company ever in any manner exposed to loss or liability in any form whatever, because of said alleged bond. The answer further states that plaintiff herein "has no legal capacity to bring or maintain this action in this court, or in this state."

These allegations are followed by a general denial of all the allegations of the petition except those therein specifically admitted. The reply was a general denial of all new matter contained in the answer.

Upon the pleadings thus made the cause was tried to a jury, resulting in a verdict and judgment for defendants. A motion for a new trial was overruled, and plaintiff filed his motion for judgment *non obstante veredicto*, which was also overruled. Plaintiff appeals.

It is assigned as error (a) that the court refused to admit evidence relative to the facts of re-insurance by the Lion Bonding & Surety Company and (b) in refusing to admit evidence relative to a conversation between defendant Land and witness Brotherton, a part of this conversation being admitted on behalf of defendants, over objections of plaintiff. It is plaintiff's position in this respect that the bond had been re-insured and therefore plaintiff was entitled to payment by defendants of the premium on the original bond. The error charged is the trial court erred in refusing to admit evidence that there was re-insurance by contract entered into by the Lion Bonding & Surety Company with the Norwegian Insurance Company, against any contingent loss to said Bonding Company on the bond.

All through the trial defendants objected to the introduction of evidence tending to show there was re-insurance, and the court upheld them in this contention. In this we think the court was not in error. It must be held that if there was any re-insurance, it was for the protection of the Lion Bonding & Surety Company, to which contract of insurance neither the drainage district nor defendants were parties, and of which they had no knowledge. There was no privity of contract as to them and no rights could accrue to them by virtue of such contract of re-insurance. The Bonding Company was the beneficiary under such contract, and then only in the event of default by defendants. The drainage district acquired no rights under the contract of re-insurance, nor could acquire any.

It was held in effect in Strong v. Gantt, 62 Mo. 289, there is no privity between the one originally insured and the re-insurer, and the liability over the re-insurer is solely to the re-insured. We rule this point against plaintiff.

We now pass to the second point under assignment No. 1, to-wit, evidence relative to a conversation between defendant Land and witness Brotherton who, the record shows, was connected with the now defunct Bonding Company, prior to April 1921, as assistant auditor, and at the time of the trial of this cause was auditor for the Department of Trade & Commerce of the State of Nebraska, and was auditor for Amos Thomas. In the last named capacity he came to St. Joseph, Missouri, and had a conversation with defendant Land in which he endeavored to collect the premium on the bond in issue. On cross examination of Brotherton the following took place:

"Q. Now, when you talked to Mr. Land here in St. Joseph, without regard to what date it was, but when you first talked to him, didn't you tell Mr. Land at that time, in effect, this: Well, our bond ran a few months and you owe us $200.00?

"MR. LANDIS: Objected to as being incompetent and immaterial; not within the issues in this case; this witness can't testify as to the legal effect of that bond and we object to this for the further reason that it apparently was an effort to compromise.

"THE COURT: The question does not assume a compromise. The other objection I don't think amounts to anything. The objection is overruled.

"To which ruling the court, plaintiff, at the time excepted, and still excepts.

"A. No, sir. I was at that time authorized to travel over the United States collecting outstanding premiums, authorized to make compromise settlements and use my own discretion as to whatever amount I might wish to take for the purpose of avoiding litigation and useless expense. We operated in 17 states and lawsuits for the collection of premiums were very costly. The Lion Bonding & Surety Company is not in bankruptcy but is being liquidated by the department.

"Q. Its affairs are being wound up because it was broke? A. Yes, sir.

"Q. Anyhow, receivers for the company were appointed in four or five states, were they not? A. There were certain ancillary receivers, ancillary to Nebraska, appointed in Minnesota and several other states."

As to this conversation, Land testified that Brotherton told him he owed $200.00, but that he denied he owed anything. We think the court's ruling was proper. There was no law suit pending at that time. The question did not assume a compromise. The testimony

tended to show plaintiff took a different position as to the amount due from the one taken at the trial. At that conversation plaintiff claimed the amount was $200.00, and at the trial he claimed it was $3220.40. For the purpose of showing this, the testimony was admissible. Brotherton denied he had said Land owed $200.00 on the premium. Land said he did. The matter was properly one for the consideration of the jury. We rule against plaintiff on this point.

It is charged the court erred in admitting evidence of a conversation between Land and Schmidt, the local agent of the Bonding Company, after the bond was signed in the presence of its state agent and attorney in fact, R. A. Valentine; that defendants would not be able to pay the premium until after defendants had started digging the ditch and had received payment on the estimate. It is plaintiff's contention that this was oral evidence tending to vary the terms of the written application, and he cites numerous cases in support of the rule that oral evidence may not be properly received to change or modify the terms of a written contract. We think plaintiff failed to make a prima-facie case; therefore, if any improper evidence was admitted in behalf of defendant, it could not change the result.

Plaintiff further contends the court erred in refusing to give his instructions A, B, C, D, E, and F. The record shows these refused instructions all were peremptory, requiring the jury to find for plaintiff. Since the record shows all the evidence heard by the court and jury and upon which the verdict was rendered is not before us, we cannot hold plaintiff was entitled to a directed verdict. The record shows part of the exhibits referred to are wholly omitted therefrom and that other exhibits are not fully set out. This situation is governed by the rules applicable to a case where the evidence is attacked by demurrer and it appears the record does not contain all the evidence, the trial court cannot be held to have erred in overruling the demurrer. [O'Malley v. Construction Co., 255 Mo. 386, 164 S. W. 565; Milling Company v. Honebrink, 247 Mo. 212, 152 S. W. 354; Richardson v. Car & Equipment Co., 7 S. W. (2d) 729; Nash v. Brick Co., 109 Mo. App. 600, 83 S. W. 90; Gooden v. M. W. A., 194 Mo. App. 666, 189 S. W. 394.] As to the action of the court in overruling plaintiff's motion for judgment *non obstante veredicto*, we hold that the pleadings presented an issue of fact and the verdict was respondent thereto.

We think defendants are correct in their position that in any event plaintiff could not recover under the evidence, for it must be held there was a total failure of consideration for the bond under the adjudication of insolvency of the Bonding Company on April 12, 1921. In this connection it is well to consider when the risk attached. The application and the bond were executed on the same day, to-wit, November 9, 1920. Under the contract the work was to begin May 1,

1921, but actually did not begin until June or July, 1921. The Bonding Company was adjudged insolvent on April 12, 1921, and on May 28, 1921, by order of the court, it was adjudged to be liquidated.

The bond provides:

"Now, therefore, if the said Land and Sampson, or anyone for them, shall well and truly carry out the contract for such work and improvements, and shall in all respects perform said contract and do the things required therein and in said plans and specifications and shall pay to said drainage district any and all sums of money which they (the drainage district) shall expend on account of any default on the part of the said Land and Sampson, then this obligation shall be void; Otherwise to remain in full force and effect."

Thus the bond purports to protect the drainage district against default by the contractors and the latter were required to begin actual work not sooner than May 1, 1921. It is plaintiff's contention that the bond attached when one of defendants bought a boat and other equipment for the work. We are not impressed with this position. The contract provided that defendants were to dig the ditch. This could not include the assembling of material and equipment therefor. No possible default of the contractors could arise before May 1, 1921, and before that time the affairs of the surety company were taken over by order of the court. Until the risk attaches the premium is not due. [Stilwell v. Insurance Company, 83 Mo. App. 215; Carr v. Insurance Co., 28 Mo. App. 215.] The general rule in this respect is stated in 32 C. J. 1040, as follows:

"As to premiums unpaid at the time of insolvency or dissolution (of surety or insurance company), policy holders are liable for so much thereof as has been earned, but they are not liable for unearned residue, that is, premiums for the unexpired term of insurance. Holders of policies on which premiums have been paid for a term extending beyond the insolvency or dissolution of the company have valid claims for unearned premiums."

See also State ex rel. v. Falkenhainer, 309 Mo. 381, 274 S. W. 722. We are of opinion that the adjudication of insolvency by the Nebraska District Court terminated the bond by operation of law.

It is plaintiff's position that the drainage company did not release the surety company because, after the adjudication of insolvency, it accepted from defendants a bond differing from the first one in character and amount. This argument is without merit. The adjudication of insolvency released the Bonding Company under the rulings in the cited cases. Plaintiff also argues that from the fact that after the adjudication of insolvency the Bonding Company wrote the drainage company and received from its engineer certain exhibits, the bond was not thereby cancelled but was considered by the drainage company as existing and in full force. But even so, it must be

held that neither the Bonding Company nor the drainage district had any power to bind defendants in this respect; nor could they undo the legal effect of the adjudication of insolvency.

For the reasons herein stated we find no reversible error of record and the judgment is accordingly affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.