**KANSAS CITY COLLEGE OF OSTEOPATHIC MEDICINE, Plaintiff, Appellant,**

v.

**EMPLOYERS' SURPLUS LINES INSURANCE COMPANY, Defendant, Appellee.**

No. 78–1079.

United States Court of Appeals, First Circuit.

Argued June 8, 1978.

Decided Aug. 14, 1978.

Marc Redlich, Boston, Mass., with whom Edwin A. McCabe, Gene K. Landy and Widett, Widett, Slater & Goldman, P. C., Boston, Mass., were on brief, for appellant.

Richard L. Neumeier, Boston, Mass., with whom Philander S. Ratzkoff, David J. Hatem and Parker, Coulter, Daley & White, Boston, Mass., were on brief, for appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, and PETTINE, District Judge.*

PETTINE, Chief District Judge.

This case poses the question of whether a contract of insurance, bargained between equals and supported by consideration, can be binding, although the procurer of insurance intentionally prevents the risk from attaching. We answer, on the facts of this case, in the affirmative.

In this diversity action, Kansas City College of Osteopathic Medicine (KCCOM) seeks return of a $200,000 insurance premium from Employers' Surplus Lines Insurance Company (ESLIC), a Delaware corporation with its principal place of business in Boston. KCCOM argued to the court below that because no risk ever attached on the policy of insurance which it purchased from ESLIC, no binding insurance contract existed. Finding this argument to be without merit, the district court, in its opinion of January 5, 1978 (C.A. No. 75-1561-C), granted ESLIC's motion for summary judgment. KCCOM appeals.

KCCOM, a non-profit graduate school of osteopathic medicine, decided in late 1968 to expand its teaching facilities. To supplement a $6,500,000 federal construction grant, made under the Public Health Service Act, KCCOM entered into negotiations with the Central States, Southeast and Southwest Areas Pension Fund to secure a $7,000,000 loan. As a condition precedent to making the loan, the Pension Fund insisted that KCCOM obtain a surety bond to indemnify the Fund against the risk of loss which might arise should KCCOM fail to comply with the Public Health Service Act § 723, 42 U.S.C. § 293c. Because the Act provides that the United States may recoup its grant should a medical college use its facilities for sectarian, profit-making or non-teaching purposes, a violation of the Act would jeopardize the capacity of KCCOM to repay the loan.

To obtain the bond, KCCOM approached a Kansas City insurance agency which subsequently employed another broker, Maurice Saval, Inc., in Boston. After nine months, during which time it received rejections from some 13 insurance companies, Saval Inc., finally obtained one offer from appellee ESLIC to write the bond.

The parties then entered into several months of negotiation for this unique insuring agreement. Pursuant to the demand of the Pension Fund, KCCOM insisted that the agreement have a non-cancellation clause. KCCOM further insisted that the policy period should begin only after completion of construction of the medical facilities. ESLIC agreed to these provisions and agreed that the policy would continue in effect for three years thereafter. But it rejected a clause providing for the partial or complete refund of the premium at the end of the

---

* Of the District of Rhode Island, sitting by designation.

insuring period, should no default occur. The insurance company also refused KCCOM's plan to pay the premium in installments; because of the non-cancellation provision, it insisted that the premium be paid in advance. During the later part of these negotiations, KCCOM entered into a $12,000,000 contract for the immediate construction of the medical facilities.

The final policy, denominated "Insuring Agreement," named the Pension Fund as the insured. While it provided that the policy would go into effect only if payment of the premium were received as of June 1, 1969, it stated that the "policy period shall be three years from . . . the completion of construction of the properties;" that was anticipated to be in the beginning of 1972. Clause eight of the policy also provided, "This policy is not subject to cancellation or *return of premium in any form*" (emphasis added). On May 29, 1969, KCCOM forwarded $200,000 in payment of the premium plus $6,083.70 in payment of the Illinois premium tax. In reliance on this, ESLIC entered into reinsurance agreements with two other insurance companies. Of the total premium, ESLIC retained only $42,125.

Sometime thereafter, KCCOM learned of a new federal program of the Federal National Mortgage Association which made available a loan, more ample, on more favorable terms and insured by the FHA. After obtaining such a loan, KCCOM cancelled its loan commitment from the Pension Fund on June 22, 1971, prior to receiving any monies from the Fund. Thereafter, KCCOM sought return of its premium be-

cause the insuring period had never commenced. When ESLIC refused, KCCOM commenced this suit.

Applying general contract principles to this case, the district court found that the agreement constituted a contract supported by a valuable consideration bargained for by both sides. It found that KCCOM received a significant benefit from a non-cancellable promise to insure a future loan against the risk of default: namely, satisfaction of a condition precedent for obtaining the Pension Fund loan.[1] The district court stressed the novelty of the arrangement and the equality of knowledge and bargaining strength of the parties. Since it determined that the contract was in effect, the court necessarily gave effect to the manifest intent of the parties, as embodied in provision 8 of the insuring agreement, that the premium be non-returnable.

KCCOM argues that the district court failed to appreciate that insurance is a branch of the law quite distinct from general contract law.[2] A special theory of consideration is said to apply in this area: until the risk occurs against which the insurance contract is made, the insurer has suffered no bargained for detriment; and in the absence of that consideration the premium shall be returned. Appellant's entire argument depends on this one principle, formulated by Lord Mansfield, two hundred years ago, in *Tyrie v. Fletcher*, 2 Cowp. 666, 98 Eng.Rep. 1297 (Ct. of Kings Bench Michaelmas Term 1777). There Lord Mansfield stated what he considered to be the general and established rule:

1. Albert Haas, the Kansas City insurance broker, testified in deposition to the uniqueness of the insurance agreement and to the fact that it was the result of careful bargaining. He described the agreement in a letter as a "major victory and most unusual for an insurance company to do." (Ap. 322, 384). He considered the agreement unique because of the extended separation between the time the contract became binding and the time the insuring period began. Haas attributed the high premium to several factors including the lack of competition in bidding, the uniqueness of the arrangement, and the fact that the agreement

"is a financial guarantee which is on the prohibited list of practically every company unless liquid collateral is furnished." (Ap. 383–86). Marshall Lerner of ESLIC attributed the refusal to provide for the return of the premium "to the nature of this coverage being extremely hazardous." (Ap. 263).

2. Of course, historically appellant is correct. Classical contract law was a relatively late creation of the nineteenth century, engrafted upon the separate bodies of law applicable to various spheres of commercial life. *See* Gilmore, *The Death of Contract*, at 11–12 & n.17 (1974).

Where the risk has not been run, whether its not having been run was owing to the fault, pleasure, or will of the insured, or to any other cause, the premium shall be returned: Because a policy of insurance is a contract of indemnity. The underwriter receives a premium for running the risk of indemnifying the insured, and whatever cause it be owing to, if he does not run the risk, the consideration, for which the premium or money was put into his hands, fails, and therefore he ought to return it.

2 Cowp. at 668; 98 Eng.Rep. at 1298.

■ This principle, argues appellant, was quickly adopted by American courts. Thus in *Taylor v. Lowell*, 3 Mass. (Tyng) 331 (1807), the Supreme Judicial Court cited Lord Mansfield's dictum as the general rule in Massachusetts. *See also The Mutual Assurance Society v. Watt's Executor*, 14 U.S. (1 Wheat.) 279, 4 L.Ed. 91 (1816). The law of Missouri, which controls this case,[3] contains dicta to the same effect, though somewhat differently stated. *See, e. g., Magers v. Western & Southern Life Ins. Co.*, 344 S.W.2d 312 (Kansas City Ct.App.Mo.App. 1961); *Randall v. Western Life Ins. Co.*, 336 S.W.2d 125, 128–29 (Kansas City Ct.App. 1960); *Schuerman v. General American Life Ins. Co.*, 232 Mo.App. 352, 106 S.W.2d 920, 922–23 (Kansas City Ct.App.1937); *Thomas v. Land*, 225 Mo.App. 216, 30 S.W.2d 1035, 1038–39 (Kansas City Ct.App. 1930); *Vining v. Franklin Fire Ins. Co.*, 89 Mo.App. 311, 323 (St.Louis Ct.App.1901). *See generally Couch on Insurance 2d* § 34:11 (1961).

■ Appellant quite rightly insists that, in this case, no risk ever ran on the policy: since no loan was ever make, no risk of default could attach. Moreover, the parties had agreed by contract that the insuring of the risk was not to commence until the completion of construction. Appellee maintains, to the contrary, that risk attached upon payment of the premium because the insurance company could no longer choose to avoid the risk should the loan be made. Though accepted by the district court, this argument is unpersuasive to us. True, the appellee could not avoid insuring the risk; but that is not the test of whether an insurable risk came into existence. Appellee cites *Rehm v. McCray*, 78 Ind.App. 540, 134 N.E. 505, 507 (1922) in which a court found that risk attached on a surety bond, purchased by a contractor, as soon as he signed a contract of construction with a municipality but before he incurred any risk by performing the work. The court therefore found that the premium was due to the bond company although the municipality had failed to sell bonds to finance the construction and cancelled the construction contract. The case may be distinguished because in *Rehm* the contractor was bound to undertake the construction whereas in this case the college was not bound to take the loan. A more apposite case, and this from Missouri, is *Thomas v. Land, supra*. On facts similar to *Rehm*, the Missouri court stated that the risk on a surety bond did not attach until actual construction work commenced; it did not attach upon the signing of the contract or upon preparation to commence work.

Winning the point that no risk attached should win the match, argues appellant. For insurance law recognizes no other "miscellaneous advantage or benefit" as consideration capable of supporting the insurance policy. Appellant relies principally on the case of *Lattarulo v. National Surety Co.*, 119 Misc. 154, 196 N.Y.S. 98 (Mun. Ct. of City of N.Y. 1922) to support this claim. In *Lattarulo* the plaintiff sought return of its premium on a surety bond obtained as a necessary preliminary step in making application to the commissioner of internal revenue for a permit to deal in non-beverage liquors. The bond ran in favor of the United States and insured against the risk of plaintiff's non-compliance with the National Prohibition Act. When the commissioner

---

**3.** No appeal was taken from the district court's determination that the Massachusetts conflict of laws rule requires that Missouri law applies to this case. Both parties agree that the laws of Massachusetts and of Illinois, which are the alternative possible sources for the law of this case, are similar to Missouri law on the subject of risk attachment.

rejected the application for a permit, the plaintiff sought return of the premium. Because no risk had attached under the bond, the court ordered the premium returned, although the plaintiff, by virtue of the bond, had received the benefit of an opportunity to compete for a lucrative permit.

Of course the benefit conferred in this case is greater than the benefit in *Lattarulo.* ESLIC's binding promise to insure can hardly be described as a "mere incidental benefit." It was of the essence for KCCOM and enabled KCCOM to begin immediate construction of the medical facilities. The actual insurance against a risk of loss from 1971–74, which would benefit the Pension Fund, was of no value to KCCOM apart from the 1969 binding promise to insure. For without that promise, the Pension Fund would have refused to make a commitment which was essential to KCCOM's commencing construction.

However, it is not simply the fact that ESLIC's promise to insure was so crucial to KCCOM's plans that convinces us that this case is an exception to the general rule requiring the return of premiums. It involved an unusual insurance risk which required careful negotiation and bargaining as to the terms of the contract and the premium price. The noncancellable nature of the insurance and the fact that the premium was to be nonrefundable were explicitly bargained for terms of the agreement between KCCOM and ESLIC. Moreover, in contrast to the imbalance between parties found in many insurance transactions, the parties here were capable of equally forceful bargaining and were represented by counsel. Here was as fully and precisely

bargained for an agreement as contract law was ever designed to enforce. We do not think that in such a context KCCOM should be able to compel a return of its full premium because its own wilful and self-interested act prevented the risk from attaching to a carefully bargained for contract.

■ Despite the fact that this was an insurance transaction we do not believe it should be immunized from the increasingly recognized contract law principle of an implied contractual duty to cooperate and facilitate the performance of mutual promises, *see Spitcaufsky v. Guignon,* 321 S.W.2d 481, 487 (Mo.1959); *Schulte Trans. Co. v. Hewitt,* 299 S.W.2d 568, 573–74 (Mo.App. 1957); *cf. Fortune v. National Cash Register Co.,* 364 N.E.2d 1251 (Mass.1977), 6 Williston on Contracts 3d ed. § 887 at 427–31 (1962); 6 Corbin on Contracts § 1323 (1962).

■ Moreover, the rule requiring a refund of premiums when no risk has occurred is least deserving of application in situations in which nothing more than the self-interested decision of the insured prevented the risk and contract from going forward. Appellant is able to cite no Missouri case on point, nor any other case from another jurisdiction requiring such a result.[4] And Lord Mansfield's dictum that it was the "pleasure or will of the insured" which prevented the risk from running has not been adopted by case law or commentary. *See* Couch on Insurance 2d § 34:11 at 751 ("in the absence of any fault or fraud on the part of the insured . . . [the premium] must be returned"); 44 C.J.S. Insurance § 407. We do not suggest that, in all

---

4. Dicta in the case of *Vining v. Franklin Fire Ins. Co.,* 89 Mo.App. at 323, dealt only with the return of a premium to an insured whose innocent mistake had prevented attachment of the risk. The case at bar is also to be distinguished from those cases, cited by appellant, wherein courts returned premiums on contracts voided by the unintentional failure of the insured to comply with a condition precedent or warranty. *See Clark v. The Manufacturers' Ins. Co.,* 2 Woodbury & Minot 472, 493–95 (1st Cir.), *rev'd on other grounds* 8 How. 235, 49 U.S. 235, 12 L.Ed. 1061 (1850); *James v. Insurance Co. of North America,* 90 Tenn. 604, 18 S.W. 260 (1891). It is also different from those decisions which give equitable restitution on insurance contracts void *ab initio* where the insured is innocent of intentional wrongdoing. *See Connecticut Mut. Life Ins. Co. v. Pyle,* 44 Ohio St. 19, 6 N.E. 465 (1886) (insured's innocent misrepresentation voids contract *ab initio*); *Interstate Life & Accident Co. v. Cook,* 19 Tenn. App. 290, 86 S.W.2d 887 (1935). *But see* Couch on Insurance 2d § 34:13–15; Annot., 129 A.L.R. 57 (1940).

or even in most traditional insurance contexts, a self-interested decision which prevents the risk from running, in and of itself, must limit the rule requiring the return of premiums. Our holding here is much narrower.

We do hold that, considering the nature of the transaction in this case, it would not be consistent with that duty of fair-dealing between equals to follow Lord Mansfield's rule and return a premium to an institution whose wilful and self-interested action prevented this carefully negotiated and exceptional insurance policy from going into effect. KCCOM got what it bargained for and it should not now be able to avoid the cost of its bargain. Nor should ESLIC be deprived of the benefit of an unusual though fair bargain and be put to the task of seeking recovery of its reinsurance premiums because KCCOM wishes to avoid the contract.

We therefore find that there was an enforceable contract supported by a valuable consideration. The district court, giving full effect to provision eight of that valid contract, properly refused to order the premium returned.

*Affirmed.*